Opinion delivered May 31, 1887.

R. M. THOMSON *v.* THE HOUSTON & TEXAS CENTRAL RAILWAY COMPANY.

1. SURVEY.—In 1874, a county surveyor could, without then making an actual survey, avail himself of knowledge obtained by a former survey, and make out field notes by virtue of a valid land certificate, or an authorized copy thereof in his possession, whereby land could be as effectually severed from the public domain as though it had been actually surveyed by virtue of the certificate which appropriated it. To establish a different rule under the laws then in force would involve consequences so grave that it could only be justified by a statute clearly requiring it.

2. SAME.—Such an appropriation of land, under the laws then in force, when made by virtue of a valid certificate, was not affected by the fact that, without making an actual survey, the county surveyor adopted a survey which was shown by his return to the general land office to have been made before the issuance of the certificate.

3. SAME.—An indorsement made in the general land office on the field notes of a survey, of its illegality can not affect legal rights.

APPEAL from Travis. Tried below before D. W. Doom, Esq., special judge.

*Rector, Moore & Thomson,* for appellant, on their proposition

that the appellee was not the equitable owner of the land in controversy when the same were filed on by appellant, cited articles 4522, 4526, 4543, Paschal's Digest; note 1004, article 4573, Paschal's Digest; articles 3192, 3977, Revised Statutes; article 14, section 2, Constitution of 1876; Evitts v. Roth, 61 Texas, 296; Ward v. Connor, 33 Texas, 566.

On their proposition that appellee's title did not have its origin in conformity with law, so as to vest a title of any kind in it, either as against the State or the defendant Thomson, they cited articles 4543, 4522, 4523, 4526, 4573, Paschal's Digest; Patrick v. Nance, 26 Texas, 301; Austin v. Dungan, 46 Texas, 244; Lewis v. Durst, 10 Texas, 415; Evetts v. Roth, 61 Texas, 87; Crow v. Reed, 25 Texas Supplement, 394; Matson v. Hord, 1 Wheat., 130; Garrett v. Jenkins, 8 Pelham, 75; Grubbs v. Rice, 2 Bibb, Kentucky, 107; Kincaid v. Blythe et al., 2 Bibb, 479.

*H. D. Prendergast* and *David H. Hewlett,* for appellee, cited Horton v. Pace, 9 Texas, 81; 16 Texas, 570; Howard v. Perry, 7 Texas, 259; Ward v. Conner, 33 Texas, 549.

STAYTON, ASSOCIATE JUSTICE.    This is an action of trespass to try title, brought by the appellee, to recover severel tracts of land situated in Wharton county which it claims under the following facts:

1.   Between the tenth of November and the seventh of December, 1874, one Turnbull, who was appointed deputy surveyor of Wharton county some time in the month of November of that year, who, however, did not qualify by giving bond until December, 19, of that year, without actually surveying the several tracts of land, ran such lines as enabled him to correctly make out field notes of the several tracts of land now in controversy.

2.   At the time Turnbull did this work the appellee owned certificates which had been located on other land which had been surveyed, and the field notes thereof with the certificates were then in the general land office; but by reason of the fact that the lands then covered by the certificates were covered by older locations or grants, the appellee was entitled to receive certified copies of the certificates and to locate them on other land.

3.   On the sixteenth of December, 1874, certified copies of the certificates were issued, and delivered to Turnbull, who after this returned to Wharton county, and (on December 26), made

out field notes of the several tracts in controversy and applied to them the copies of certificates which he then had, but the field notes of the several tracts bore dates of the times when Turnbull by running some lines probably acquired information by which, without actual survey, he could make out correct field notes of the several tracts and give true connections with older grants or surveys.

4. The field notes, with the certificates of the appellee applied to them, were approved and certified by the county surveyor, and then, with the copies of certificates, were returned to the general land office on December 31, 1874, and it is not claimed that those field notes were not correct.

5. The county surveyor of Wharton county did not properly record the field notes in his office at the time he approved and certified the originals that were sent to the general land office, but he retained in his office copies of the field notes of the several tracts, with a declaration to each, for whom surveyed, and by virtue of what certificate, which were signed by Turnbull but not by the county surveyor. These matters seem to have been entered in a book that was kept in the surveyor's office, which the evidence tends to show was furnished by Turnbull.

A copy or what appeared in that book, as to one tract of the land, is admitted to be the same in form and completeness as to all, except as to the number of the certificate and the field notes to which applied, and the copy as to one tract found in the record is as follows:

"THE STATE OF TEXAS, }          SURVEY No. 31.
WHARTON COUNTY.      }

Field notes of a survey of six hundred and forty acres of land made for the Houston & Texas Central Railway Company, it being the quantity to which it is entitled by virtue of certificate No. 284, issued by the commissioner of the general land office, on the —— day of —— 18—

Said survey is No. 31, in —— county, Texas, situated on the waters of ——, a tributary of the Rio Grande, about —— miles —— from ——

Beginning at the northeast corner of the Andrea Dunlap and the southwest corner of the William J. Wickam survey, thence east nineteen hundred varas to corner, thence south nineteen

hundred varas to corner, thence west nineteen hundred varas to corner, thence north nineteen hundred varas to beginning."

" I, —— deputy surveyor ——, do hereby certify that the foregoing survey was made on the ground according to law, and that the limits, boundaries and corners, with the marks, natural and artificial, are truly described in the foregoing plat and field notes.

GEORGE W. TURNBULL,
District Surveyor —— District."

6.   There is evidence from which an inference might be drawn that Turnbull was the agent of the appellee at the time he did the several acts before referred to.

7.   There was nothing in the field notes filed in the general land office to show any irregularity in the manner of making the surveys, but the dates at which the surveys are stated to have been made, showed, when examined in connection with the copies of certificates filed with them, that the latter were issued after the survey was made, and on the back of each of the files in the land office the following indorsement was made by one of the clerks in that office :   " Illegal, copy of this certificate issued December 16, 1874 ; survey made prior to the issuance of the certificate."

8.   The field notes filed in the general land office, with the other papers in the several files, were seen and read by the appellant before he took any steps to appropriate the land, as was everything relating to the lands in the office of the surveyor of Wharton county.

9.   With such notice of the appellee's claim, as the appellant thus acquired on November 7, 1881, appellant caused the land claimed by appellee to be located by virtue of valid land certificates which he owned, and under his locations surveys were made, which with his certificates were returned to the general land office within the time prescribed by law.

The cause was tried without a jury, and a judgment rendered in favor of the appellee.

It is urged that the facts shown by the plaintiff do not show title, legal or equitable, as against the State or the defendant. If the facts show that the plaintiff, within the spirit of the law, caused the land, which it claims, to be surveyed by virtue of valid land certificates over part of the vacant public domain, as against the State, it has equitable title, and this can not be defeated by the subsequently attempted appropriation of the same land by

the defendant, if he had notice of the prior appropriation by the plaintiff. That the land was vacant at the time the plaintiff attempted to appropriate it can not be denied by the defendant, who asserts that such was its character long afterwards. That the certificates, of which copies issued on December 16, 1874, were valid and owned by the plaintiff, are admitted facts. The question then arises whether such steps were taken in the county of Wharton as severed the land from the public domain and appropriated it by virtue of the certificates owned by the plaintiff.

That the deputy surveyor, if such he was, at the time he ran lines sufficient to enable him to make correct field notes of the several tracts to which the plaintiff's certificates were afterwards applied, had no authority to make surveys by virtue of the plaintiff's certificates, is too clear; for at that time the certificates were in the general land office and applied to other lands.

It did not rest with the county surveyor or his deputy to determine whether the certificates were located upon land held by older rights, or whether facts existed which, at some future time, would entitle the plaintiff to have certified copies of its certificates, which it might locate upon other land. At any time, however, after the sixteenth of December, 1874, before the end of that year, the plaintiff had the right to appropriate the land in controversy by virtue of the copies of certificates which it held. This it might do, either by making what are known as locations in the county surveyor's office, followed by surveys and return of field notes and certificates to the general land office within the time prescribed by law; or it might be done by having surveys made by virtue of the certificates and these properly certified and returned to the general land office; but, under either method, the policy of the law would require that the certificates should be under the control of the county surveyor; and if, without knowing that the certificates were not appropriated to other lands, he had certified field notes to the general land office, he would have violated his duty.

In this case there is no claim that the field notes, made out and certified by virtue of the copies of certificates owned by the plaintiff, were not correct. That the copies of certificates were in the hands of the deputy or county surveyor when the field notes which were sent to the general land office were made out, can not, under the evidence, be questioned.

Might the surveyor or his deputy avail themselves of knowl-

edge which they then had, and from this make out field notes by virtue of those certificates whereby the land could be severed from the public domain as fully as though the land had actually been surveyed by virtue of the certificates after the copies were issued?

The manner of making surveys was not so specifically prescribed, nor the requirements so exacting in the year 1874, as are they by the law now in force; and to hold that the designation of land by boundaries and natural and artificial objects, actually ascertained and fixed by surveying all the lines, was then required to give validity to a survey, by which is meant a description of land for its identification, rather than the actual work done by the surveyor to enable him to give such a description would be fraught with consequences so grave that nothing short of a statute clearly requiring such a construction would justify it. It has been held that a surveyor might adopt a survey formerly made. (Horton v. Pace, 9 Texas, 84; Jones v. Burgett, 46 Texas, 293; Lake v. Wafer, 16 Texas, 570.)

In the case last cited it was claimed that the survey was made in 1841, and that the certificate was not applied to it until some time in 1844, but it was held that this was unimportant. In Howard v. Perry, 7 Texas, 266, it was held that a survey made by a deputy surveyor, for himself, became in contemplation of law, the act of the district surveyor when approved him.

We are of the opinion that the appropriation of the copies of the certificates to the lands described in the field notes certified by the county surveyor, legally appropriated the land, even though the correctness of the field notes may have been ascertained by the work formerly done by the deputy or in some other manner than by an actual survey made before or after the copies of certificates issued; while, had the county surveyor approved and certified the field notes before the copies of certificates issued from the general land office, his act would have been unauthorized.

The fact that the county surveyor did not properly fill up the blanks showing the surveys under the several certificates, can not affect the right of the plaintiff. The appellant saw, in the general land office, the field notes certified by the county surveyor, and the copies of certificates on which the surveyor declared the land described had been appropriated, and those papers showed that there was a period between the time at which the copies of the certificates issued and the time at which

all the papers were filed in the general land office, during which the certificates might legally have been applied to the lands, and it thereby severed from the public domain, and he was not at liberty to presume that either the surveyor or his deputy had violated his duty. The certificates of the county surveyor and his deputy, in connection with the papers which they certified, and the copies of the certificates, in effect, declare that the lands described in the several field notes, had been appropri..ted by virtue of these certificates. These papers gave notice of the right of the appellee.

It is unnecessary to inquire what effect, as notice of appellee's rights, the records of the surveyor's office, which the appellant did cause to be examined, had. If the appellant saw proper to rely upon the opinion of a clerk in the general land office, evidenced by his indorsement on the several files, while the papers in the files which he inspected gave him notice of facts which would validate the claims of the appellee, that is his misfortune.

There was an agreement of the parties as to the ownership of certificates by each; and among those admitted to be owned by the appellee was one numbered eighty-seven, under which it sought to recover a tract of land.

There is a further agreement as to the return of field notes to the general land office, but this agreement does not expressly admit that field notes were returned under each of the certificates admitted to belong to the appellee.

It was not shown that any survey was made and returned to the general land office by virtue of certificate number eighty-seven, but judgment was rendered in favor of appellee for six hundred and forty acres of land, described as su.. rey number eleven, made under that certificate.

There is not sufficient evidence to sustain this part of the judgment; but, as the parties may have undersoood that the agreement rendered it unnecessary to find that the field notes were made and returned to the general land office, we think it more likely to subserve the ends of justice to reverse and remand the cause than to render the judgment here. We have not thought it necessary in this case to construe article 2, section 14, of the Constitution, or article 3921 of the Revised Statutes, under which the appellee claims protection. The judgment of the district court will be reversed and the cause remanded.

*Reversed and remanded.*