## T. J. SMITH v. W. L. McGAUGHEY.

### No. 91.

87  61
87  639

87  61
91  534

**Surveys Under Confederate Land Certificates.**

Under a Confederate land certificate the holder caused survey of two tracts, one for 1254 acres, the other for 1280 acres. The surveys were not connected, and each covered all the vacant land where located. Subsequent to the decision in Rosenberg v. Cuellar the holder caused each of the surveys to be resurveyed into equal parts and filed field notes of the resurvey in the Land Office. He designated one survey in each tract for himself and the other for the school fund. He brought suit to compel the Commissioner of the General Land Office to issue patents.

*Held:* 1. Conceding that the holder was not entitled to locate the entire certificate upon two disconnected tracts, and to designate which should be for his own benefit, it does not follow that the surveys were void .......................................................... 66

2. It was competent to cause the surveys to be divided into equal surveys. It seems that the surveyor should originally have made and returned the surveys in the mode adopted in the corrected field notes .......................................................... 67

3. While the statute does not indicate the manner by which it shall be determined which of such two surveys required to be made shall belong to the State, it seems equitable that the Commissioner of the General Land Office should determine which shall belong to the school fund .......................................................... 68

4. Inasmuch as the plaintiff indicated which of the surveys he should have, a mandamus is refused. He had no right to make the selection. 68

Original Proceeding in the Supreme Court against the Commissioner of the General Land Office, to compel the issuance of patents upon surveys made under a Confederate land certificate.

*D. W. Doom*, for plaintiff.—1. The act of the Legislature of the State of Texas, approved April 9, 1881, under which the certificate was issued by virtue of which plaintiff's locations were made, did not require that land located for the permanent school fund should be contiguous to the individual locations.

The only part of that act applicable to the question here involved is section 3, which provides, that the certificates granted under the provisions of this act shall be located as follows: "The locator shall also locate a like amount of land for the benefit of the permanent school fund, before either shall be patented, and such locations shall be made on any of the public domain of Texas not reserved by law from location."

This act originated in the Senate, by a bill known as Senate bill number 258, in which section 3 provided as follows: "The certificate granted under the provisions of this act may be located as a headright certificate upon any of the public domain, and patented as in other cases; and land located by virtue thereof shall be exempt from forced sale so long as it shall remain the property of the grantee in said certificate."

On March 19, 1881, the bill passed the Senate with various amendments, but section 3, above quoted, was unchanged.

On March 19, 1881, the bill passed the House, with three amendments thereto; the only amendment to section 3 being to strike out that part thereof which exempted the land from forced sale. The House having insisted on its amendments, a committee of free conference was appointed, which recommended, among other things, to strike out from section 3 the words " may be located as a headright certificate upon any of the vacant public domain," and insert, " shall be located as follows: The locator shall also locate a like amount of land for the benefit of the permanent school fund before either shall be patented, and such locations shall be made on any of the public domain of Texas not reserved by law from location."

The report of the committee of free conference was adopted, and the bill enrolled on March 31, 1881.    *    *    *

2. The Commissioner of the General Land Office of the State of Texas in office at the time the original location of plaintiff's certificate was made having instructed the surveyors throughout the State to make the surveys for the school fund and for the individual under such certificates in separate tracts, and that they need not be contiguous or alternate, such instructions were binding upon the surveyors and upon persons claiming such certificates. Rev. Stats., art. 3840; Pasch. Dig., art. 4522; Peacock v. Hammond, 6 Texas, 548; Lewis v. Durst, 10 Texas, 398.

3. But if it be conceded that the rulings and instructions of the Commissioner of the General Land Office were outside of his authority and were erroneous, and that surveys made by surveyors in pursuance of such rulings and instructions were erroneous and illegal, it does not follow that such surveys and locations, when the certificate with field notes had been properly returned to the General Land Office within the proper time, were absolutely void, but were only erroneous or incorrect, and capable of correction as in other incorrect field notes under the law. Rev. Stats., arts. 3911, 3912, 3918, 3919.

It is worthy of remark, that if the original survey made for plaintiff of 1254 acres was absolutely void, then that the survey of 1280 acres made by virtue of the same certificate and about the same time for the school fund, was also void, since the Act of February 3, 1883, provides only, " that any and all public lands heretofore surveyed by railroads or corporations, or any company or any person, in this State for the benefit of the public free schools of this State by virtue of any certificate, valid or invalid, void or voidable, be and the same are hereby declared to be lands belonging to the public free schools of this State," since that act was passed before the original location made by plaintiff, and by its terms applied only to lands surveyed before that time.

4. The contention of the defendant, that there is no means of ascertaining which of the four surveys made by plaintiff by virtue of his certificate should be patented to him, ought not to be seriously considered, since if these locations are properly made under the certificate and the law under which the certificate was issued, by analogy to other laws requiring alternate surveys, then the practice of the Commissioner of the General Land Office in those cases to patent the odd numbers to the individual, reserving the even numbers for the State, either according to the original numbers made by the owner or surveyor, or by the numbers as changed by the Commissioner of the General Land Office himself, and the Commissioner, the defendant in this case, had ample authority under the law in such analogous cases to have exercised the right to change the numbers and to have selected the surveys which should have been patented to the plaintiff. Not having done so, he ought not now to be allowed to urge his failure to exercise that right to defeat plaintiff's right to have two of his said surveys patented to himself.

The facts alleged by plaintiff in this case are not in issue. This being a suit for mandamus, the general denial interposed by defendant does not raise any question of fact. Sansom v. Mercer, 5 S. W. Rep., 62; 68 Texas, 488; Brown v. Ruse, 69 Texas, 589.

*C. A. Culberson*, Attorney-General, and *Frank Andrews*, Assistant, for defendant.— 1. Can the plaintiff, under pretense of correcting two illegal surveys, divide them into four, and have the field notes thereof returned

to and filed in the General Land Office more than five years after the is-
suance of the certificate?

2. If the first question be answered in the affirmative, has either the
plaintiff or the Commissioner of the General Land Office the right to elect
which of the two surveys shall be made for the individual and which for
the school fund?

Article 14, section 2, of the Constitution of 1876, in so far as it is ap-
plicable to the question at issue, provides: "All genuine land certificates
hereafter issued by the State shall be surveyed and returned to the Gen-
eral Land Office within five years after issuance, or be forever barred."
What is meant by the term "surveyed and returned to the General Land
Office?" Evidently a legal and valid survey; such a survey as patent
might legally issue upon; such a survey as the law requires of the owner
of a certificate in order to acquire and appropriate the land. A condi-
tion precedent to plaintiff's right to acquire any land under the certifi-
cate in this case was that he should survey a like amount of vacant and
unappropriated public domain for the public school fund as that surveyed
for himself, and the further condition was that the two surveys so made
should be contiguous.

That the two original surveys were wholly void can not now be ques-
tioned. In Von Rosenberg v. Cuellar, 80 Texas, at page 256, this point
is expressly decided: "If it were contended that appellant ought to be
permitted to hold one-half of each survey sued for, and thus be entitled
to maintain this action as a tenant in common, the answer to this would
be, that it was incumbent on him to segregate from the vacant public
domain and from that which might become his own, a like number of
acres for the school fund as for himself. This was the consideration he
was bound to give before he could become entitled to any land under
such certificate." This language of the Chief Justice meets the issue in
the present case. Plaintiff had not under his first surveys "segregated
from the public domain and from that which might become his own a like
number of acres for the school fund as for himself." The surveys there-
fore made in 1883 were wholly void, and ineffectual to confer any rights
upon the plaintiff.

When, then, was the survey first made in accordance with law? If ever
so made, it was when the surveys were made over the "same land," and
each of the original surveys was divided into two, one for plaintiff and
one for the school fund. This was in March and August, 1893. The
certificate was issued nearly ten years before, and was void under the bar
of the Constitution long prior to the last surveys. The alleged corrected
survey is a mere pretense and a sham. There can be no such thing known
to the law as a correction of a void survey. There is nothing to support
the contention that the alleged correction is one in truth, when the facts
show that two distinct surveys were made of each of the original surveys.

The effect is exactly the same as if the land surveyed in 1893 had never been surveyed before for any purpose. When the field notes of these surveys of 1893 were returned to the Land Office, the certificate under which they purport to have been made had been issued more than five years, and no legal survey ever having been made thereunder, it was void and of no effect. What, then, is the legal status of a survey made under a certificate issued more than five years prior to the survey, but returned to and filed in the General Land Office under a void survey within the five years? Can the void survey of 1883 keep alive the certificate issued in 1881 and avoid the constitutional bar? Will the attempt to make a survey, though wholly void, authorize a new survey after the lapse of five years after the issuance of a certificate? There can be but one answer to these questions; the first survey was void; it did not stay the running of the Constitution, and the certificate itself being void when the second surveys were made, it conferred no rights whatever, and the last surveys of plaintiff are wholly ineffectual to appropriate any land or confer any right.

Even if the surveys as made in 1893 should be held valid, patents could not issue, because the law granting the certificates does not confer either upon the owner of the certificate or upon the Land Commissioner the right to elect which survey shall be patented to the individual and which reserved for the school fund. This can only be cured by legislation. The omission of such a provision seems peculiar to this law alone. All other acts granting lands and requiring a like amount to be surveyed for the school fund, provide how the selection may be made; but no such provision appears under the act under which the certificate in this case was issued. It is especially insisted, that if plaintiff's surveys are valid, that patents can not issue, because of the want of the right of election.

GAINES, ASSOCIATE JUSTICE.—This is a petition for a writ of mandamus to compel the defendant, as the Commissioner of the General Land Office, to issue patents to the petitioner to two surveys of land in Newton County.

It appears from the allegations in the petition, that the plaintiff, being the owner of a certain land certificate issued in pursuance of the Act of April 9, 1881, granting certificates for land to persons permanently disabled in the service of the State or of the Confederate States, in September, 1883, filed the same upon two tracts of the unappropriated public domain lying in Newton County, and caused the lands to be surveyed and the field notes, together with the certificate, to be returned to the General Land Office. One of these surveys was for 1254 acres of land and the other for 1280. They were not contiguous to each other, but each embraced all the vacant land in the respective tract. The tract first

mentioned was located for the petitioner, and the second for the benefit of the school fund. The lands were not patented under these locations.

Such was the state of the case when the decision of this court in Von Rosenberg v. Cuellar, 80 Texas, 249, was announced. In that case it was held, that the act under which the certificate in question was issued did not authorize the holder of such certificate to select his own land and locate it in one part of the State, and to locate the like quantity for the school fund in a different locality. Subsequent to that ruling the petitioner caused each of the two tracts to be subdivided into two surveys, equal in quantity, and returned the new field notes to the General Land Office. The two new surveys on the tract of 1254 acres were numbered 1 and 2, and the two on the other 3 and 4, respectively. Surveys 1 and 3 purported to have been located for petitioner, and 2 and 4 for the State. The field notes of surveys numbers 3 and 4 are alleged to have been passed upon at the Land Office and found correct; and it is also alleged that the field notes of numbers 1 and 2 were also found correct, except as to a conflict with an older pre-emption survey which had been abandoned, as shown by an affidavit on file in the General Land Office.

It may be conceded, for the purposes of this opinion, that the petitioner was not entitled to locate the entire certificate upon two disconnected tracts, and to designate which should be for his own benefit. It does not follow that he would not have the right to cause each parcel to be resurveyed into two equal tracts in order to comply with the intent of the statute. Whether he had this right or not depends, as we think, upon the question whether the original locations were void or merely erroneous.

Since there was not vacant land enough in either locality to admit of the location of the entire certificate in two surveys adjacent to each other, he was entitled to locate the certificate in part upon the one tract and in part upon the other. In other words, he had the right, by virtue of the certificate, to appropriate for the purposes declared in the act under which it was granted all the land in the two surveys.

Should the fact that he has mistaken his right, and has claimed and designated one survey for himself and the other for the State invalidate the location? We think not. Let us illustrate: It has been decided, that the owner of an undivided half of a certificate for land may locate one-half thereof for his own benefit, and that he becomes the owner in severalty of the land so located. But let us suppose that two persons acquire title to a certificate under a contract that one shall locate it for the benefit of both, and that he whose right and duty it is to select the land and make the location should file upon two tracts equal in quantity, and in the file should designate that one is for himself and the other for his co-owner, could it be seriously contended that the locations were void? We think not. The result in such a case would be the same, although the agreement between the holders of the certificate had been that one should

make the locations in two surveys, and the other should have the right to select one of them as his own. In the latter case, the attempt of the locator to exercise a privilege to which he was not entitled would be without effect as against his co-owner, but it would not render the location void.

The case supposed is not essentially different in this respect from that under consideration. The locations lawfully appropriated the two tracts of land by virtue of the certificate. The surveys it may be were incorrect, by reason of the fact that each tract should have been divided into two surveys, each of the same number of acres. It may have been the duty of the surveyor to have so surveyed the lands in the first instance, notwithstanding the directions of the locator to the contrary. The petitioner may have mistaken his right, and the surveyor may have mistaken his duty. It does not, however, follow that the locations were thereby made void. It has been, we think, the uniform practice to correct errors in surveys after the field notes have been returned to the General Land Office, and we see no good reason why the rule should not apply in the present case.

But the petitioner has designated one of the two new surveys on each tract for himself, and his prayer is that the Commissioner may be commanded to issue patents to him to the surveys so designated. This raises the question, Who has the right of selection?

The third section of the act by virtue of which the certificate under consideration was issued provides, that "The certificate granted under the provisions of this act shall be located as follows: The locator shall also locate a like amount of land for the benefit of the permanent school fund before either shall be patented; and such locations shall be made on any of the public domain of Texas not reserved by law from location." 2 Sayles' Ann. Stats., arts. 3880d, 322.

If the intention was that the locator should be entitled to select which of the two locations should be patented to himself, that intention is not directly expressed. What is expressed is, that before patents shall issue, two surveys shall be located by virtue of the certificate, one of which shall belong to the locator and the other to the State. That the duty of designating which shall belong to the holder of the certificate and which to the school fund is devolved either upon the locator or upon the Commissioner of the General Land Office is necessarily implied; but who is to exercise that right is a question which can be determined only by construction.

The purpose of requiring a location for the State was doubtless to give effect to that provision of the Constitution of 1875 which declared, that one-half of the unappropriated domain then existing should belong to the school fund; and we think this fact should be kept prominently in view in determining the question under consideration.

The school fund being entitled to an undivided one-half interest in the public lands, it was proper for the Legislature, if not its duty, when granting the right to appropriate any part of them, to make provision for setting apart in severalty a like portion to the school fund. Since the adoption of the Constitution this has been the general, though not the uniform, course of the legislation which authorized the appropriation of the public lands.

It may be that the Legislature, in providing for the segregation of the interest of the school fund in lands to be located by virtue of a certificate of the character of that now in consideration had the power to set apart to it a tract equal in quantity but inferior in value to that to be appropriated by the locator.

But it seems to us it was not only proper, but also its duty, in providing for either a general or a partial partition, to adopt measures to secure as far as practicable a fair and equitable division of whatever should be partitioned.

To authorize the locator, in a case like this, to select his own survey, would be to enable him to locate two adjacent surveys, equal in quantity but unequal in value, and to appropriate a valuable survey for himself, and to designate for the school fund one comparatively worthless. Such a result would be inequitable and unjust to a fund having under the Constitution an equal right with the State in the lands so appropriated.

On the other hand, a provision which requires the Commissioner to designate which survey should be patented to the locator and which set apart to the school fund, is equitable in its results. The holder of the certificate has it in his power to locate upon two surveys of substantially the same value, so that he can not be prejudiced by the Commissioner's selection.

Since the act does not expressly require that the two surveys shall be of equal value, it would seem that the right of selection on part of the Commissioner is a check upon the power of the locator, necessary for the protection of the school fund.

Conceding, then, for the sake of the argument, that the Legislature had the power to give the right of selection to the locator, the intention of the act not being express, and one construction leading to an equitable and another to an inequitable result, the question is, which should prevail? We are of opinion that we should not impute to the Legislature an intention to do an injustice to a favored fund, and that the law properly construed requires the Commissioner to act, in analogy to the practice under similar statutes for locating "alternate certificates," and to select one for the school fund and to patent the other to the plaintiff.

We have deemed it proper to express our opinion as to the rights of the petitioner under his locations so as to avoid further litigation. But since the prayer of the petition is to compel the Commissioner to patent

the two surveys which have been designated by the petitioner for himself, it follows from what has been said that his prayer can not be granted. The peremptory writ of mandamus is therefore refused, at the plaintiff's costs.

*Mandamus refused.*

Delivered May 31, 1894.