### W. B. ABNEY ET AL. v. STATE OF TEXAS.

Decided December 30, 1898.

**1. Delinquent Taxes—Limitation.**

The omission from the Revised Statutes of 1895 of the law exempting claims for taxes from the operation of statutes of limitation (Acts 16th Leg., Spec. Sess., p. 15) was remedied by the re-enactment of that law (Act of October 9, 1895) before a bar had been created. These acts had a prospective effect, and render limitation unavailable as a defense to suits for taxes.

2. **Location—Confederate Certificates—Taxation.**

The location of public land by "Confederate" certificate, with survey of corresponding amount for the public schools, did not entitle the locator to patent nor subject his land to taxation until the State had selected the survey which should go to the school fund.

APPEAL from Lampasas. Tried below before Hon. JOHN M. FURMAN.

*Walter Acker, W. B. Abney* and *J. C. Matthews,* for appellants.

*M. M. Crane,* Attorney-General, and *John M. King,* Assistant, for appellee.

COLLARD, ASSOCIATE JUSTICE.—This suit was brought by the State against Walter Acker, J. C. Matthews, and W. B. Abney, April 28, 1898, to recover $56.36 for taxes, penalty, and costs, for 1886, 1887, 1888, 1889, and 1890, assessed against the unknown owner of an undivided interest in the Mrs. L. Priest survey, in Lampasas County, patented to Acker and Toland, December 17, 1890, that is 719 acres out of the 736¼ acres survey, described by metes and bounds. Plaintiff also prayed for foreclosure of lien on the land. The taxes and costs sued for were,—State tax and interest, $25.12; county tax and interest, $27.48.

Defendants filed May 5, 1898, general and special exceptions, and answered, that, prior to 1886, Acker and Toland, owners of Confederate scrip No. 1834, for 1280 acres of land, caused one survey of 719 acres to be located in Lampasas County, the land described in petition, and in October, 1890, the survey was corrected to include 736¼ acres, an equal number of acres with the alternate survey selected by the State for the school fund, the same not contiguous to the survey described in the petition; that on December 17, 1890, the State, by the Commissioner of the General Land Office, designated the survey to be taken for the public school fund, situated in another county, and patented to Acker and Toland the survey described in the petition; that Acker and Toland had no right to demand patent for the survey in Lampasas County until about December 17, 1890; and, therefore, it was not subject to taxation.

Defendants also pleaded the statute of limitation of two years.

May 21, 1898, the court overruled defendants' exceptions, and, trying the case without a jury, rendered judgment for plaintiff for $57.17, and foreclosed the lien as prayed for in the petition, from which defendants have appealed.

The facts established on the trial are as follows:

"1. It is agreed that the Lucinda Priest certificate, by virtue of which the land in controversy was located, was surveyed in two surveys, one of which was located in Lampasas County, and one in another county and not contiguous to the survey in Lampasas County. That the survey in Lampasas County was made prior to 1886 and contained 719 acres, and the other survey, the field notes thereof having been corrected, contained 736¼ acres, but some time in the year 1890 the survey in Lam-

pasas County was corrected, and, as corrected, contained 736¼ acres, and is the same survey that was patented to Acker and Toland as assignees on December 17, 1890, and included within its boundaries the 719 acres surveyed prior to 1886, and at the time of its location prior to 1886, and up to 1890, the 719 acres in Lampasas County was claimed by the locators, Acker and Toland.

"2. And it is further agreed that if the land described in plaintiff's petition was subject to taxation in the years from 1886 to 1890, both inclusive, and the taxes claimed by plaintiff are not barred by limitation, then the plaintiff is entitled to recover the amount sued for in this cause.

"3. And it is further agreed that the defendants are now, and were when this suit was instituted, the owners of the land described in plaintiff's petition.

"4. And it is further agreed that the land described in plaintiff's petition, against which taxes are claimed, is a part of a survey of 736¼ acres patented to Acker and Toland, as assignees of Mrs. Lucinda Priest, on December 17, 1890, said land having been located by virtue of Confederate scrip No. 1834, and that the alternate survey selected by the State, for the State school fund was not located contiguous to said survey patented as aforesaid to Acker and Toland, and that the State never made its selection of said school survey until December 17, 1890."

After finding the facts as stated, the court declared the law as follows:

"1. I find the law to be that from the time of the location of a certificate on land subject to location, and the survey of such land, and the return of the field notes and certificate to, and filing same in the General Land Office, the entire equitable and beneficiary interest in said land becomes vested in the owner of the certificate, and from that time the interest of such owner is taxable, even though the patent may not issue until long after. The land is subject to taxation, and the issue of the patent relates back to the original location and entry.

"2. I find that, by the Act of 1897, patents issued on locations made by virtue of Confederate scrip are validated, even though the school and individual sections or surveys made by virtue of such certificate may not have been made contiguous or adjacent to each other.

"3. I find that the Legislature, by the Act of 1897, in validating the patent, validated also the proceedings which culminated in the issuance of the patent; and, as the patent relates back to the original location and entry, any errors, irregularities, or defects therein are cured, and it is now as though none had ever existed; hence I conclude that the land described in plaintiff's petition is under the law chargeable with the taxes for which the State sues. The Act of 1897 validating the patent is not in the nature of a donation or legislative grant, but is merely an act to cure defects in the title evidenced by the patent.

"4. I find the bar of the statute of limitation sought to be interposed by the defendants to defeat the recovery of the taxes sued for in his case can not avail, and hence I find for plaintiff the amount of taxes,

costs, etc., as prayed for, with foreclosure of tax lien on property described in its petition."

*Opinion.*—The first question discussed by appellants in their brief is, "Was the State's and county's claim for taxes barred by the statute of limitation of two years?" Our opinion is that it was not.

At the special session of the Sixteenth Legislature the following statute was enacted: "No delinquent taxpayer shall have the right to plead in any court, or in any manner rely upon any statute of limitation by way of defense against the payment of any taxes due from him or her, either to the State or any county, city, or town." Gen. Laws Special Session Sixteenth Legislature, p. 15.

The codifiers omitted this act in compiling the Revised Statutes of 1895. But at the first called session of the Twenty-fourth Legislature, October 9, 1895, the identical Act of 1879, quoted above, was re-enacted, which took effect immediately upon its passage. Gen. Laws First Called Session Twenty-fourth Legislature, p. 6.

Then if it could be said that limitation would run against the State when the statute is silent upon the subject, it could only run from the time the Revised Statutes took effect to the time the law was re-enacted,— from September 1 to October 9, 1895. This is true also as to the claim for county taxes. The period during which the statute was silent was not sufficient to create a bar; and there was therefore no vested right. We believe both Acts of 1879 and 1895 had a prospective effect, and should be applied to all taxes then due and thereafter accruing for which suits might afterwards be brought. Mellinger v. City of Houston, 68 Texas, 42.

In the emergency clause of the Act of 1895, cited as a reason why the act should take effect at once, it is stated that "whereas there is now no law in this State to prevent delinquent taxpayers from setting up the statute of limitation as a defense against the payment of any taxes due," etc. Doubtless this declaration referred to the short period above mentioned, when the statute was not in force, and it is a legislative construction of the law as to that period, but certainly it is not for the time when the act was in force.

On the second question raised in appellant's brief, we concur with them that the land was not taxable until the Commissioner of the General Land Office had selected the survey for the permanent school fund, and that no taxes would accrue in the years prior to that time.

It was held in Smith v. McGaughey, 87 Texas, 67, that the intent of the statute granting these Confederate certificates, in providing that the locator should locate two surveys of like amount, one for himself and one for the school fund, was to give effect to that provision of the Constitution of 1875, which donated to the school fund one-half of the unappropriated public domain. And it was also held that the locator, for obvious reasons, could not make his own selection and obtain patent for the survey selected by him; but that the duty of selection devolved upon the Commissioner of the General Land Office. The locator could not demand a

patent to the particular survey he may have intended for himself. Until the Commissioner acted, there was no severance of land from public domain and no divestiture of the State's title. It remained in the State and was not taxable. The Act of 1897, validating locations of these certificates in surveys not contiguous, did not affect the question. It was still the duty of the chief of the land department to make this selection, and at least the title did not vest until this selection was made. The validating act did no more than to engraft upon the original act the right to locate the two surveys in different places, not contiguous. The locator's title was conditional, and depended upon the act of the Commissioner. In Pitts v. Booth, 15 Texas, 453, it was held that land located by conditional certificate was not taxable, and would not be until the unconditional certificate issued; and it was also decided that lands are not taxable until a patent can be demanded.

It is only when a valid certificate has been located upon land subject to location, and the field notes returned to the Land Office in proper time, that a patent can be demanded and the land taxed. Upshur v. Pace, 15 Texas, 533. The location of a genuine certificate upon public land subject to location and return of field notes to the General Land Office in the time required by law severs the land from the public domain and vests the equitable title in the owner, upon which he can demand a patent. Dibrell v. Smith, 49 Texas, 480. Until everything necessary to severing the land from the public domain is done, the title, both legal and equitable, remains in the State. Taylor v. Robinson, 72 Texas, 369; 25 Am. and Eng. Enc. of Law, 112; Railway v. Prescott, 16 Wall., 603; Railway v. McShane, 22 Wall., 445; Railway v. Price County, 133 U. S., 496; Railway v. Traill County, 115 U. S., 601.

Under the facts agreed on, the land was not subject to taxation by the State or county for the years claimed, and it follows that the judgment of the lower court should be reversed and here rendered for the appellants, and it is so ordered.

*Reversed and rendered.*