## CROOK et al. v. TEXAS CO. et al.

### No. 2165.

Court of Civil Appeals of Texas. Beaumont.

May 27, 1932.

Rehearing Denied June 22, 1932.

Crook, Lefler, Cunningham & Murphy and Holland & Cousins, all of Beaumont, for appellants.

B. C. Clark, Wm. E. Loose, and Williams, Lee, Hill, Sears & Kennerly, all of Houston, for appellees.

WALKER, J.

This was an action in trespass to try title, filed in Orange county on the 26th day of August, 1929, by appellants, W. M. Crook,

Selestin E. Schlovan, and Pattillo Higgins, against appellees, the Texas Company, Gulf Production Company, and W. H. Stark, to recover the title and possession of Mary A. E. Hall survey No. 1 in Orange county containing 654.3 acres of land, and for rents, profits, etc. The defendants answered by general and special demurrers, pleas of not guilty, the several statutes of limitations, and other pleas not necessary to mention. The trial was to a jury with judgment, after motions for an instructed verdict had been overruled, for appellees.

The facts are as follows: Under the provisions of the Act of April 9, 1881, granting certificates for land to persons permanently disabled in the service of the state or of the Confederate States, Confederate Veteran Certificate No. 1489 for 1,280 acres of land was issued to Mary A. E. Hall on December 14, 1881, and by her transferred to Thos. J. Smith on the 21st of December, 1881. The law under which this certificate was issued provided that "the certificate granted under the provisions of this act shall be located as follows: The locator shall also locate a like amount of land for the benefit of the permanent school fund before either shall be patented, and such locations shall be made on any of the public domain of Texas not reserved by law from location." General Laws 1881, p. 122, c. 106, § 3. This certificate was delivered by Smith to the county surveyor of Newton county, who, under its authority, on the 12th day of March, 1883, surveyed for him in Newton county 1,280 acres of land. The field notes of this survey were filed for record on the 23d of March, 1883, and the certificate itself, bearing the indorsement of the county surveyor, dated the 24th of March, 1883, that he had surveyed "on the within certificate in Newton County, Texas, for T. J. Smith 1280 acres of land," together with the field notes of the 1,280 acres of land, was filed in the General Land Office on the 12th of November, 1883.

On the 12th day of November, 1883, the Commissioner of the General Land Office issued a certificate, directed to any legally authorized surveyor of the state of Texas, directing him to survey 1,280 acres of any of the vacant and unappropriated public domain in the state of Texas for the benefit of the public free school fund. On its face, this certificate recited all that Smith had done under Certificate No. 1489 and directed that the survey be made under authority of that certificate. This certificate was delivered to the county surveyor of Orange county, who, acting under its authority, surveyed 1,280 acres of land in Orange county for the benefit of the public free school fund. The field notes of this survey were certified to by the county surveyor on the 19th of November, 1883, and were filed in the General Land Office on the

31st of December, 1883. This tract of 1,280 acres was classified by the General Land Office as "watered grazing" and valued at $2 per acre on July 15, 1892. The classification and appraisement of this land as public free school land was duly recorded in the General Land Office and in the proper records of Orange county. Subsequently it was resurveyed and revalued at $1 per acre and record thereof again made in the General Land Office and in the proper records of Orange county.

The above-described tract of 1,280 acres of land in Newton county was resurveyed on the 28th of October, 1893, by dividing it into two surveys, designated respectively as surveys Nos. 1 and 2, each containing 625½ acres, and the corrected field notes were filed in the General Land Office on the 18th of November, 1893. The field notes of survey No. 1 recited that it was made for T. J. Smith, and of survey No. 2 that it was made for the benefit of the public free school fund by virtue of Confederate Scrip No. 1489, issued to Mary A. E. Hall. Survey No. 1 was patented to T. J. Smith on the 1st day of January, 1895, and under the patent the title to that survey passed to Smith. Survey No. 2 was claimed by the Commissioner of the General Land Office as belonging to the public free school fund, and the timber thereon was sold by him to Alexander Gilmer on the 28th of August, 1900, at $3.75 per acre. Afterwards survey No. 2 was regularly sold to Alexander Gilmer by the commissioner, on his application, dated the 13th day of June, 1905, stating that he was the owner of the timber on this survey, for the sum of $1,251, and patent duly issued to him for this land on the 29th day of September, 1905.

On the 12th day of April, 1900, J. A. Bunn filed in the General Land Office his application and the affidavit required by law to purchase the Orange county 1,280 acres under its classification and appraisement as public free school land, at $1 per acre. The cash payment required by law and Bunn's obligation for the unpaid purchase price, duly executed by him, accompanied his application. The treasurer of the state accepted the cash payment, and issued his receipt therefor, dated the 10th of November, 1900. On the application thus made, the land was awarded to Bunn on the 19th of November, 1900, as public free school land. On the 26th of December, 1900, Bunn sold this 1,280 acres of land to appellant Selestin E. Schlovan, who duly filed his deed in the General Land Office on the 21st of January, 1901, together with his application and obligation as substitute purchaser. Schlovan was duly accepted by the General Land Office as substitute purchaser and record thereof regularly made in the General Land Office on the 5th of December, 1901. On the 15th of March, 1905, he made and filed in the General Land Office proof in

due form of his occupancy and improvements of the home section under which he had made the purchase of the 1,280 acres.

On March 13, 1901, the county surveyor of Orange county divided the Orange county 1,280 acres into two tracts, just as the Newton county tract of 1,280 acres had been divided; the south tract containing 654.3 acres, described as surveyed for T. J. Smith and designated as Mary A. E. Hall Survey No. 1, the north tract containing 667.3 acres, described as surveyed for the benefit of the public free school fund and designated as Mary A. E. Hall Survey No. 2. The corrected field notes were returned to and filed in the General Land Office on the 13th of April, 1901. On the 12th of June, 1901, the Commissioner of the General Land Office entered the words, "Cancelled for abandonment of home tract," on the application and obligation of J. A. Bunn. On the 17th of June, 1901, patent to the Mary A. E. Hall Survey No. 1 of 654.3 acres of land in Orange county was regularly issued to T. J. Smith. On the 10th of December, 1901, Selestin E. Schlovan filed in the General Land Office his application and affidavit to buy, as public free school land, the Mary A. E. Hall Survey No. 2, containing 667.3 acres of land, and it was regularly awarded to him on June 2, 1902. His title to this survey is not in question.

On the 4th of December, 1906, Selestin E. Schlovan, joined by his wife, deeded the Orange county 1,280 acres to appellants W. M. Crook and Pattillo Higgins. As originally filed, this suit was by appellants for the entire tract of 1,280 acres, but by amendment they sued for only survey No. 1, patented to T. J. Smith, as stated above. Appellees hold under T. J. Smith, to whom the land was patented.

Opinion.

The jury found that on June 22, 1901, J. A. Bunn did not desire to purchase "for a home for himself" the land designated by him in his application as his home section; that he had not in good faith "actually settled upon" his home section; and that he had not in good faith actually resided thereon and occupied the home section as his home. These were the only questions submitted to the jury. In view of the fact that Schlovan received a conveyance from Bunn and filed the same in the General Land Office and was duly accepted by the General Land Office as substitute purchaser under Bunn and subsequently performed all the things required of him by law as a purchaser of public free school land, it was immaterial that Bunn did not desire to purchase the home section for a home and had not settled thereon in good faith and had not occupied it in good faith. It is the law that, when a substitute purchaser complied with all the conditions of his purchase, the irregularities or even the invalidity of the prior sale,

made by the state to his grantor, became immaterial as affecting his title. Goodwin v. Koonce, 62 Tex. Civ. App. 161, 130 S. W. 620; Johnson v. Bibb, 32 Tex. Civ. App. 471, 75 S. W. 71; Reininger v. Pannell, 46 Tex. Civ. App. 137, 101 S. W. 816. It follows that the court submitted only immaterial issues to the jury and that the issues raised by the facts must be determined upon the merits of the motions for an instructed verdict.

The undisputed facts raise two controlling issues: First, was the land in controversy public free school land on April 12, 1900, when it was awarded as such to J. A. Bunn? If it was public free school land, the Land Commissioner could sell it only in the manner prescribed by law, that is, as it was sold to Bunn, and under the law Schlovan acquired title thereto. Main v. Cartwright (Tex. Civ. App.) 200 S. W. 847; Allen v. Draper (Tex. Com. App.) 254 S. W. 783, 785; Eyl v. State, 37 Tex. Civ. App. 297, 84 S. W. 607, 611. The second issue arises by reason of the fact that Schlovan acquiesced in the cancellation of the prior award made to him by the General Land Office and made a new application to purchase survey No. 2, which was granted, and under which he acquired title to that survey. However, as we believe that the tract of 1,280 acres of land in Orange county was not public free school land when it was awarded to Bunn, we pretermit a discussion of the second question.

It was the intent of the law under which the Mary A. E. Hall Certificate No. 1489 was issued that the holder should locate the public free school land contiguous to his land. This construction was given the Act of April 9, 1881, by our Supreme Court in Von Rosenberg v. Cuellar, 80 Tex. 249, 16 S. W. 58, 59, and Smith v. McGaughey, 87 Tex. 61, 26 S. W. 1073. However, the authorities cited clearly hold that the failure of the owner to locate the public free school land contiguous to his land did not render the surveys absolutely void but only made them irregular, or voidable. See, also, State v. Powell, 63 Tex. Civ. App. 405, 134 S. W. 746; Eyl v. State, supra; Barrow v. Gridley, 25 Tex. Civ. App. 13, 59 S. W. 602, 913; Abney v. State, 20 Tex. Civ. App. 101, 47 S. W. 1043. This irregularity in making the surveys had the effect of depriving the locator of the right to a patent to the land claimed by him under his certificate, until the irregularity was cured. In Smith v. McGaughey, supra, it is held that this irregularity could be cured by dividing each survey into two equal parts, with the Land Commissioner having the right to choose or select the land desired by him for the use of the public free school fund. (The Smith in that case was the same Smith in this case.) This was the course followed by Smith and the Land Commissioner in 1893 in dividing the Newton county 1,280 acres. Though that tract was reported to the Land Office as having been made

for Smith, the Land Commissioner, as it was his duty to do under the law, before issuing patent, refused to recognize Smith's ownership to all that tract, but had it divided, and then patented to Smith half the tract and claimed, and subsequently sold, for the benefit of the public free school fund, the other tract.

■ But before the Newton county land was thus partitioned between Smith and the public free school fund, in fact, immediately after it was surveyed, the Land Commissioner attempted to recognize it as the property of Smith and, as stated above, issued his certificate to have surveyed 1,280 acres of additional land for the benefit of the public free school fund. This certificate was issued without authority of law because, under the authorities cited above, the commissioner was without authority to ratify the selection by Smith of the Newton county land as his property. It requires no argument to demonstrate that he could not choose for the public free school fund between the Newton county land and a tract of equal acreage that had not been surveyed. So the act of the county surveyor of Orange county, under this certificate, in surveying the 1,280 acres for the public free school fund, was a void act; not that the survey was void, because it was not, but his recitation in the field notes that it was made for the public free school fund was wholly without legal effect. The making of that survey, however, segregated from the public domain, by an irregular act but one subject to ratification by the parties, both the Newton county and Orange county surveys. Smith v. McGaughey, supra. But as they were not contiguous, the Land Commissioner did not have the power to take the Orange county tract for the school fund by conceding to Smith the Newton county tract. It follows that the classification of the Orange county land in 1892 as public free school land was without legal effect. This proposition clearly follows from the construction given by the Supreme Court to the facts of Smith v. McGaughey, supra. Both the commissioner and Smith recognized this fact at a time when no adverse interests had been acquired in either tract, and lawfully divided the Newton county tract equally between them. The partition of the Newton county land was not an optional choice by the parties, for under the law it was the only way by which Smith could acquire title or patent to any part of the Newton county land and by which any part of it could be set apart for the use of the public free school fund. Smith v. McGaughey, supra.

■■ After the division of the Newton county land, what was the status of the Orange county land? It was an irregular survey, that is, made in an irregular manner, which, as we have said above, made void the attempt of the Land Commissioner in 1892 to claim it for

the benefit of the public free school fund. The irregularities in surveys, made as were the Mary A. E. Hall surveys, were cured by the validating Act of April 7, 1897, cited and construed by the court in State v. Powell, supra. Gen. Laws 25th Leg. p. 113, chapter 88, § 2, 10 Gammel's Laws, p. 1167. When this survey was validated, Smith and the public free school fund held its title as tenants in common, each owning an undivided one-half interest, which neither could sell to the prejudice of the other; Smith, because the field notes of the survey showed the adverse interest of the public free school fund; the commissioner, because his file on certificate No. 1489 showed Smith's interest; and appellants and all persons under whom they hold were charged by law with notice of everything appearing in the files of the General Land Office relating to this certificate. The following authorities sustain the proposition that Bunn and Schlovan and appellants Crook and Higgins bought with notice of all things recited in the files of the Land Office, in relation to their certificate: Fristoe v. Blum, 92 Tex. 76, 45 S. W. 998; Whitman v. Rhomberg (Tex. Civ. App.) 25 S. W. 451, 452; Creswell Ranche & Cattle Co. v. Waldstein (Tex. Civ. App.) 28 S. W. 260, 262; Thompson v. Railway, 68 Tex. 392, 4 S. W. 629; Temple Lumber Co. v. Brocks (Tex. Civ. App.) 165 S. W. 507.

In holding that Smith and the public free school fund were made tenants in common by the validating act of April 7, 1897, we are not in conflict with Von Rosenberg v. Cuellar, supra, where the Supreme Court held that "it was evidently intended that the surveys for each should be separate, and not that one survey of 2,560 acres should be made in which the owner of the certificate and the school fund should have equal, but undivided, interests; for one of the purposes, as well as the consideration on which these grants were to be made, was that the owner of such a certificate should segregate from the public domain 1,280 acres for the school fund." As Smith and the General Land Office had appropriated in a lawful manner and divided the Newton county 1,280 acres, the validating act effectually segregated, for all purposes and against all claims of irregularity, the Orange county 1,280 acres. If this conclusion follows, then it must be said that Smith and the public free school fund owned in common the Orange county land. As both Bunn and Schlovan had notice through the files of the General Land Office, on the proposition discussed above, of Smith's interest in the Orange county land, the award by the Land Office was void to the full extent of Smith's interest. Though the validating act of 1897 relieved the Orange county survey of its irregularities, the Land Office could not legally grant Smith a patent to his interest, nor could the Land Commissioner appropriate the balance of the land to the public free school fund until the survey

was divided. Smith v. McGaughey, supra. After its division in 1901 and the selection by the Commissioner of survey No. 2, Smith's title to survey No. 1 immediately became absolute and he was entitled to his patent, which was lawfully issued to him. By a regular chain of conveyances appellees own Smith's title. It follows, independent of the jury's verdict, that appellees were entitled, as a matter of law, to judgment for the land sued for.

As the case was tried to a jury, the court did not err in refusing to file, on motion of appellants, the conclusions of law and fact upon which the judgment was based.

For the reasons stated, the judgment of the lower court is in all things affirmed.