STEPHEN SPARKS ET AL. v. F. Y. HALL ET AL.

Decided April 2, 1902.

**1.—Appeal—Conclusions of Law Below.**

Where the trial judge's conclusions of law do not show that the judgment was based upon any particular issue, it will be affirmed if the facts sustain it upon any issue.

**2.—Limitations—Adverse Possession—Finding.**

Where the trial court found that plaintiff's possession of the land was under recorded deeds and accompanied by assessment and payment of taxes, it follows as a necessary inference that it was adverse in character.

**3.—Same—Conflicting Locations—Quieting Title.**

Evidence considered and held to show that plaintiffs, claiming under a junior location of a certificate made in 1838, had acquired title to the land by limitations, and were entitled to a judgment quieting their title against claims under the adverse prior location.

**4.—Same—Survey—Land Certificate.**

Where the survey under which defendants claimed required correction by reason of a part of the certificate having subsequently been located elsewhere, they could not, by refraining for thirty years from making the correction, hold their claim to the land in abeyance and thereby defeat the running of limitations against them.

**5.—Same—Curative Act of 1871.**

The league and labor certificate under which defendants claim having been validated by the curative Act of April 25, 1871 (2 Paschal's Digest Laws, article 7089), so that thereafter they could have maintained a possessory action against trespassers, limitations ran against them from that date.

Appeal from Harrison. Trial below before Hon. Marvin Turney, Special Judge.

*S. A. Carroll,* for appellants.

*F. H. Prendergast,* for appellee.

JAMES, CHIEF JUSTICE.—The suit was brought by F. Y. Hall and about twenty-six other persons against appellants to quiet title to a tract of land of about 4300 acres. There was an injunction asked to restrain the county surveyor (a defendant) from surveying the land, or correcting a former survey thereof, but no temporary injunction was issued. It was alleged that each one of the plaintiffs owned a certain number of acres in the tract in severalty, the amounts aggregating all

the land in the tract. No objection is made for misjoinder of parties or actions, and this feature of the case will not be further noticed.

The petition alleged that plaintiffs owned the land known as the Martha Duncan league in fee simple; that defendants claim the land, and claim to be owners of the Floyd Jordan league and labor certificate which was once located in some way on this land, and have demanded of the county surveyor that he survey the land by virtue of said Jordan certificate, or that he correct a survey heretofore made on said land by it; that the land is not subject to be so surveyed or the former survey corrected, by reason of the following facts: (1) That the survey of the land was made by virtue thereof on March 19, 1838. (2) That a survey of the land was made by virtue of the Martha Duncan league and labor certificate on September 21, 1838. (3) The Martha Duncan survey corrected on August 30, 1851. (4) The Martha Duncan certificate was relocated on same land April 19, 1854. (5) The Floyd Jordan survey was corrected April 17, 1855. (6) Plaintiff and those under whom they claim have title to the land by the three years statute of limitation. (7) Plaintiff and those under whom they claim have title by the five years statue. (8) Also under the ten years statute. (9) Plaintiff and those under whom they hold have had peaceable possession of the land for more than fifty years, cultivating, using, and enjoying the same, claiming to be the owners, paying all taxes and exercising all acts of ownership; so long, in fact, that some of the muniments and evidences of title and ownership have been lost or destroyed, wherefore all right and title and interest in said land and in to so much of the Floyd Jordan certificate as was located on said land is and has become vested in plaintiffs, both by the law of limitations and of presumptive title. That the survey of 1838 under the Jordan certificate was abandoned before the attempted correction of the survey under it in 1855, etc.

Defendants pleaded that they claim only a part of the land described in the petition, describing such part being 14,820,000 square varas according to a corrected survey made July 29, 1901, by virtue of the Jordan certificate, and as to such part plead general denial and not guilty.

The case was tried by the court and decree was for the petitioners.

Inasmuch as we have concluded that petitioner's title by limitation is established, we shall after stating the evidence confine our discussion to that matter. The trial judge's conclusions (there being no statement of facts) show substantially the following facts:

The survey for the Jordan certificate for a league and labor was made March 19, 1838, calling for 22,572,680 square varas. The field notes were filed in the General Land Office January 3, 1854. Corrected field notes were made April 17, 1855, and filed May 10, 1855. A duplicate certificate (the original being then considered lost) was filed with the surveys September 14, 1854. In 1858 some person unknown made two surveys by virtue of the original certificate in the Milam district, and it and the two surveys were returned to the Land Office.

After this it and the two surveys were withdrawn by S. Crosby, but by what authority is not shown. The field notes were never returned, but the original certificate in some manner found its way back into the Land Office. There is a survey for 11,180,000 square varas in Wichita County, made November 17, 1860, for M. T. Johnson (who he was the record does not show) by virtue of the Jordan certificate, and patented August 7, 1869, to the heirs of Floyd Jordan. This survey and the one described in defendants' answer made in 1901, pending this suit, would complete the 26 labors and constitute all the land now surveyed or claimed under the Jordan.

The survey for the Duncan certificate (issued to Elisha Williams, assignee) was made embracing about two-thirds of the land included in the first Jordan survey; on September 21, 1838, for 17,902,256 square varas. These field notes were filed in the Land Office January 3, 1854. On November 6, 1851, the certificate was filed in the Land Office with a second survey made August 30, 1851, calling for 24,836,880 square varas, embracing all the territory contained in the first Jordan survey. A third survey under the Duncan certificate for the balance of 1,163,120 square varas was made in October, 1851, field notes filed in April, 1853, and the land patented in 1876. This last survey is entirely outside of any of the above surveys, and the two surveys constitute all the lands now claimed under the Duncan certificate. The Duncan certificate was by some means unexplained withdrawn from the Land Office in 1872 for relocation, and a survey was returned with it for a league and labor of land in Taylor and Runnels counties in 1874, and said surveys and certificate are now in the Land Office marked "canceled." This survey was abandoned in August, 1876. The original certificate was marked "canceled" because a duplicate had issued.

On July 27, 1847, Elisha Williams sold the Martha certificate to William Pinckney Hill.

W. P. Hill sold the land to various parties as follows: To E. T. Craig, July 1, 1847, 792½ acres; to N. V. Board, July 1, 1847, 792½ acres; to McDonald & Wilder, August 9, 1848, 1195 acres; to N. V. Board, August 20, 1848, 160 acres; to W. T. Scott, September 30, 1850, 1150 acres; to N. V. Board, March 15, 1854, 315 acres.

Each of these deeds were placed on record within a few months from the time they were made. Craig went into possession in 1848 and has held possession ever since. N. V. Board went into possession of the 792½ acres in 1848, and he and his vendees have held possession ever since. McDonald and Wilder went into possession in 1849, and they and their vendees have been in possession ever since. That possession of the remainder of the land was taken by the vendees of W. P. Hill and W. T. Scott prior to 1860 and has been held ever since. That plaintiffs and their vendors have had their deeds on record showing chain of title from Elisha Williams to the party in possession since 1860.

Plaintiffs have paid all taxes assessed against said land, and it has been regularly assessed since 1884 as the Martha Duncan tract. It was

shown that Craig and Stringer paid taxes on their land from 1855. Up to the present time it was not shown whether the other plaintiffs paid taxes prior to 1870 or not, as the tax rolls were burned in 1899.

Defendants have not paid any taxes on the land and it has not been assessed as the Floyd Jordan land, but was always assessed as the Martha Duncan land.

The Floyd Jordan certificate for one league and labor of land is one of those pronounced genuine and recommended for patent by the Commissioners appointed under the act to detect fraudulent land certificates and to provide for issuing patents to legal claimants, passed January 29, 1840.

*Opinion.*—The judge's conclusions of law leave it uncertain upon what theory of fact he rendered judgment for plaintiff. It was probably either upon the issue of limitations, or the issue of abandonment of defendant's claim prior to the survey for the Duncan certificate in 1851. The conclusions filed not showing that the judgment was based upon any particular issue, it must be affirmed if the facts would sustain it upon any issue.

The Act of April 25, 1871 (2 Paschal's Digest, article 7089), validated the title under the Jordan certificate, as the court found. This however would not have had the effect of renewing it, if it had in fact been abandoned.

The facts as found are that plaintiffs have been in possession of the land under recorded deeds to themselves and their vendors from and under the assignee of the Duncan certificate at least since 1860. We take this as necessarily meaning that the possession has been actual, and that the deeds were duly recorded. In reference to taxes the court made the following finding: "Plaintiffs have paid all taxes assessed against said land, and it has been regularly assessed since 1884 as the Martha Duncan tract; it was shown that Craig and Stringer paid taxes on their land from 1855 up to the present time; it was not shown whether the other plaintiffs paid taxes prior to 1870 or not, as the tax rolls were burned in 1899; defendants have not paid any taxes on the land, and it has not been assessed as the Floyd Jordan land, but was always assessed as the Martha Duncan land." As to the character of defendant's possession, it is insisted by appellants that the findings fail to show that it was adverse or hostile. We think that such is the necessary inference from the findings. The court found something further than mere possession; it found that plaintiff's possession was in connection with deeds on record and accompanied, at least since 1884, and in great part long prior thereto, by assessment of the land and payment of taxes. This sufficiently shows that their possession was not held in subordination to the title of others, and gives to it an adverse character. Craig v. Cartwright, 65 Texas, 421. The possession appears to have been continuous and uninterrupted by any possession by defendants and those under whom they claim. We are of opinion also,

assuming of course that defendants' title had not been lost by abondonment, that defendants, since the curative act of 1871, have been in position to assert whatever right they had in the land, having at that time and since a valid subsisting survey by virtue of a valid certificate on file in the land office (Paschal's Digest, article 5303), and that article 5259, Revised Statutes of 1879, did not affect such pre-existing right. There is one fact which would seem to militate against defendants' right to sue after 1871, viz., the fact that in 1860 a survey was made in Wichita County for 11,180,000 square varas and which was patented in August, 1869. Thus in 1871, when the curative act was passed, nearly half of the Jordan certificate had been applied elsewhere, and without a correction of the field notes reducing the quantity of the land in question to the unused portion of the certificate, the land subject to be appropriated could not be identified, and it might be said that until that was done (and it was not done until 1901), defendants were unable to sue in trespass to try title. And it is contended by appellants that limitation has not run against them for a single day,—citing chiefly Von Rosenberg v. Cuellar, 80 Texas, 249. That case is essentially different from this one, and it is our opinion that as defendants had it in their power to obtain the correction at any time, without waiting until 1901, it was practically in their power to have sued at any time since 1871 for so much of the land as they were entitled to under the certificate, and they could not simply by refraining from making the correction, hold their claim to the land in abeyance and defeat the running of the statute upon that ground.

The facts are not such as would have conferred title by limitations prior to 1853. The only possession shown prior to that time was of distinct parts of the land aggregating less that the entire tract, and no parcel is identified, consequently there is no basis for a judgment for title by limitations prior to that date. Nor could there be any between said date and the Act of 1871, because no right of action existed during such period.

But since 1871 we think the statute has been running in favor of appellees against any title the appellants had in the land or any part thereof. Therefore the judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

The only testimony which would have the tendency to affect the right of appellants to have maintained an action of trespass to try title from and after the passage of the curative act of 1871, consists of the fact that prior to said date a survey of 11,180,000 square varas had been located and patented in Wichita County by virtue of the Floyd Jordan certificate. The facts as to this are stated in the opinion as follows:

"The survey for the Jordan certificate for a league and labor was made March 19, 1838, calling for 22,572,680 square varas. The field

notes were filed in the General Land Office January 3, 1854. Corrected field notes were made April 17, 1855, and filed May 10, 1855. A duplicate certificate (the original being then considered lost) was filed with the surveys September 14, 1854. In 1858 some person unknown made two surveys by virtue of the original certificate in the Milam district, and it and the two surveys were returned to the Land Office. After this it and the two surveys were withdrawn by S. Crosby, but by what authority is not shown. The field notes were never returned, but the original certificate in some manner found its way back into the Land Office. There is a survey for 11,180,000 square varas in Wichita County, made November 17, 1860, for M. T. Johnson (who he was the record does not show) by virtue of the Jordan certificate and patented August 7, 1869, to the heirs of Floyd Jordan. This survey and the one described in defendants' answer made in 1901, pending this suit, would complete the 26 labors and constitute all the land now surveyed or claimed under the Jordan."

It therefore appears that a duplicate of the league and labor certificate had been obtained and was filed with the field notes for that amount of land. This was the condition of that file in 1871, and is so yet. The lost certificate so far as this record goes to show was used by some person in 1858 in the Milam district, but the certificate and these surveys were withdrawn. In 1860 another survey was made for one M. T. Johnson (who was not connected in any manner with appellants so far as appears), and being the survey in Wichita County, and this was patented by patent to the heirs of Floyd Jordan in 1869. How far this proceeding affected the right of appellants to the league in question would, under the circumstances, be a question between appellants and the State. It appears that the Commissioner in 1891 required the survey to be corrected and cut own so as to take off the quantity of land for which patent had been issued, and the appellants are now ready to accede to this. But it seems to us that since 1871 appellants had such equitable or prima facie title by virtue of the duplicate certificate, original location and survey, and the curative act, as would have entitled them to maintain a possessory action against mere trespassers.

The motion is overruled.

*Overruled.*

Writ of error refused.