## WM. VON ROSENBERG V. CASTULO CUELLAR ET AL.

### No. 2931.

1. **Confederate Certificates, Location of.** — The Act of 1881 granting land to Confederate soldiers provided that "the certificates granted under the provisions of this act shall be located as follows: The locator shall also locate a like amount of land for the benefit of the permanent school fund before either shall be patented, and such locations shall be made on any of the public domain of Texas not reserved by law from location." This act evidently contemplates that two surveys of twelve hundred and eighty acres each be made and field notes returned to the General Land Office. In all other statutes giving to individuals or corporations the right to acquire land coupled with a requirement that a like quantity shall be surveyed for the school fund it has been contemplated that the surveys which the owner of the certificate shall have, and the survey for the school fund under the same certificate, shall be contiguous; and there is nothing in the act under which the Confederate scrip was issued which shows a contrary intention.

2. **Same.**—It never was contemplated that the owner of such a certificate might for himself select lands in one locality and locate in some other part of the State lands

for the school fund. Such locations (not contiguous) are not made according to law. (See example.)

3. **Patent upon Illegal Surveys.**—If suit be brought upon lands patented but upon illegal surveys, the certificate being genuine, no one not claiming under some right existing prior to the issuance thereof could question their validity.

4. **Illegal Survey—No Joint Ownership.**—The holder of the certificate locating one survey for himself and that for the school fund in another county in suit upon the former can not claim to hold it one half for himself and half for the school fund. It was his duty to segregate each from the body of the public lands.

5. **Location and Survey.**—Article 4795, Revised Statutes, constituting land scrip and survey sufficient to maintain trespass to try title applies to legal surveys only.

6. **Return of Field Notes and Certificates to Land Office.**—Holder of Confederate land scrip located and caused surveys for twelve hundred and eighty acres each. He caused field notes to be returned to the General Land Office. The certificates he withdrew from the surveyor's office for use in having surveys for the school fund in another county upon them. *Held*, by so doing and failure to return the certificates to the General Land Office within the time prescribed the surveys were forfeited and became of no effect.

7. **Statutes Construed Touching Locating Land Scrip.** — Revised Statutes, articles 3895, 3906, 3890, 3902, 3909, 3887, 3888, 3889, 3810, discussed and construed. They evidence that it was not intended when a survey with the certificate by virtue of which it was made have been filed in the General Land Office that the certificate shall ever go out again for any purpose. It is equally forbidden that the surveyor part with the certificate after making survey upon it save to forward it to the Land Office.

8. **Failure to Return Certificate in Twelve Months.** — Inasmuch as the law prescribes that certificates shall be returned to the General Land Office within twelve months after the survey, the failure to do so is fatal to any right under the survey; such right is not protected or failure to return excused by attempting to use them elsewhere, if it were legal to do so, whereby they were not returned as they should have been.

9. **Limitation to Certificates.**—Section 2, article 14, of the Constitution prescribes that "all genuine land certificates hereafter issued by the State shall be surveyed and returned to the General Land Office within five years after their issuance, or be forever barred." Certificates issued December 2, 1882, were barred July 16, 1889, on day of the trial. There was no legal obstacle to their return to the Land Office and they are no longer a basis of any right.

APPEAL from Webb. Tried below before Hon. J. C. Russell. The opinion gives a statement.

*Walton, Hill & Walton* and *Bethel Coopwood,* for appellant.—1. The right to have the quantities surveyed for the school fund attached at the date of making the file and application in the office of the surveyor of Zapata County, and it could not be defeated by the act of that officer. Montell v. Speed, 53 Texas, 339; Hamilton v. Avery, 20 Texas, 635; Sherwood v. Fleming, 25 Texas Supp., 408; Milam County v. Bateman, 54 Texas, 163; Gullett v. O'Connor, 5 Texas, 408.

2. The right of appellant to the land in controversy, by virtue of his location and surveys, was not forfeited by reason of his failure on account of the litigation to return the field notes of the school quantities and the certificates within the time prescribed by law; and the terms

of article 3895 of the Revised Statutes were not intended to embrace a case like this, where there were legal impediments to the survey of the school quantities that could only be removed by an adjudication on the locator's right to have the land selected, located, and surveyed; and it would require express affirmative legislation to authorize the conclusion that such was the intention of the Legislature. Ellis v. Batts, 26 Texas, 703; Edwards v. James, 13 Texas, 54.

3. The act granting these Confederate certificates was passed after the adoption of the Revised Statutes, and did not contemplate that the individual and school portions should be in form of alternate surveys, but required the locator to "also locate a like amount of land for the benefit of the permanent school fund before either shall be patented, and such location shall be made on any of the public domain of Texas not reserved by law from location." And appellant having made file and application for surveys of the individual part of the seventeen scrips, together with such scrips in the office of the Starr district surveyor, and obtained the surveys and field notes and had the latter duly recorded in the office of such surveyor, was entitled to the certificates to make the necessary files and applications for surveys of the school fund quantity in any other district where he might find public domain of Texas not reserved by law from location. Sec. 3, Act of April 9, 1881; Acts of 17th Leg., p. 122; Sayles' Civ. Stats., p. 322.

4. When appellant had presented his genuine land certificates to the surveyor of Zapata County, with the designation of the lands upon which he sought to locate the school fund quantity granted by the same, as he was required to do by the terms of the Act of 1881, and the surveyor refused to make the surveys, all that he could do to secure the survey of the lands for the school fund, as required by the law and the certificate, was to promptly resort to the courts of the country to enforce such rights; and the delays occasioned by the courts and the acts of the State's agent, the surveyor, while appellant is persistently urging his rights, can not cause him to lose them by the lapse of time not occasioned by his fault or neglect, and no such result can be anticipated as flowing from the spirit or intent of a provision in our statute. Booth v. Strippleman, 61 Texas, 381, 382.

5. Location and survey of the certificates constituted title sufficient to authorize the maintenance of the action of trespass to try title, and the return of the certificates to the Land Office was not a requisite to such title; and "where the owner of the certificates is proceeding in the usual manner to locate the school portion, and obtain a survey and return of the field notes" of the school surveys as required by law, but is prevented from accomplishing this by the persistent refusal of the agents of the State to make such surveys, and is compelled to resort to the courts of the country to secure his rights, the Legislature did not intend to bar his individual surveys on account of nonreturn of the

certificates to the Land Office pending such litigation; and to allow such bar would be for the State to take advantage of her own wrong perpetrated through her agent the surveyor. Rev. Stats., art. 4795; Booth v. Strippleman, 61 Texas, 382.

6. The court erred in its conclusions of law in holding "that the withdrawal of said land certificates from the hands of the surveyor of Starr land district by the plaintiff, and his failure to return the same to the General Land Office with his field notes, invalidated said field notes, and that they are invalid and worthless as title," and in failing to find in lieu thereof that the filing of said certificates with the surveyor of Zapata County and the action of such officer in refusing to survey and return the same, and the suit brought by plaintiff to compel such surveys, and still pending, relieved plaintiff from the necessity of returning said certificates to the Land Office within the year prescribed by statute, and that such failure to return the same did not invalidate the surveys made of the individual quantities of land they grant and authorize the owner to locate and appropriate.

*W. Showalter,* for appellees.—1. It is not error to sustain an objection to the introduction of invalid field notes when offered as a basis to prove title in an action of trespass to try title.

The plaintiff made the location and filed his certificates of Confederate scrip which cover the land in controversy on the 27th and 28th days of September, 1883, in the surveyor's office of the Starr land district. The land was surveyed October 8, 1883, and the field notes and applications filed in the General Land Office October 2, 1883, but the scrip was never returned to the General Land Office.

On the 24th day of October, 1883, before the field notes were returned to the General Land Office, the scrip was taken from the surveyor's office of the Starr land district and filed in the county surveyor's office of Zapata County, where they still are. That for the school quantity, which should have been surveyed with said scrip under the law, plaintiff made application for surveys on land in Zapata County to the surveyor of that county and filed the scrip in his office. The surveyor claimed that the land demanded was covered by a Spanish grant and refused to make the surveys. Plaintiff brought suit by mandamus to compel the surveyor to make surveys, which was decided against plaintiff, from which decision he appealed, and the case is still pending in the Supreme Court. Rev. Stats., arts. 3895, 3904, 3923, 3890.

2. The mere fact that the field notes were certified copies from the Land Office does not make them admissible in evidence unless the originals would have been admissible. Rev. Stats., art. 2253.

3. The application together with the land certificate or scrip shall be filed in the office of the county or district surveyor in which the land is situated and where the said claim is to be surveyed, and shall

remain until returned together with the field notes to the General Land Office.   Rev. Stats., arts. 3895–3909.

4.   In order to make the survey and field notes of the individual part of the land located by virtue of Confederate scrip good and valid, and sufficient as evidence to maintain the action of trespass to try title, an equal amount of land must also be surveyed upon the public domain (not on titled land) for the State for the benefit of the public school fund.

STAYTON, CHIEF JUSTICE.—This action was brought by W. von Rosenberg, in form of trespass to try title, to recover a tract of land in Encinal County, consisting of seventeen surveys of twelve hundred and eighty acres each, located and surveyed by virtue of seventeen land scrips for twelve hundred and eighty acres of land each, instituted in the District Court of Webb County, to which Encinal County is attached for judicial purposes, on the 7th day of September, 1887.   The defendants claimed the land as a Mexican grant, setting up their claim of title in their answer.

There are two controlling questions in this case, either of which decided against appellant will be fatal to his claim, and they must both be decided in his favor to entitle him to recover.

The first relates to the sufficiency of the facts shown by him to entitle him to recover against appellees or any person in possession even without right, and as the cause was tried without a jury this branch of the case will be considered as though all the documentary evidence bearing on plaintiff's title had been admitted.

On the 27th and 28th days of September, 1883, plaintiff, being the owner of seventeen land certificates issued under the Act of April 9, 1881, and known as Confederate scrip, located them on the lands in controversy as may be headright and other certificates not requiring the survey of any land for the State, thus appropriating one body of land embracing an area of twenty-one thousand seven hundred and sixty acres.   The certificates were filed in the surveyor's office at the time of the locations and there remained until after surveys were made.

The surveys were made and returned to the General Land Office within the time prescribed by law, but the certificates on which the surveys were made had not been returned to the General Land Office on July 19, 1889, the day on which this cause was tried.

These lands are situated in Encinal County, and before the field notes were sent to the General Land Office plaintiff withdrew the seventeen land certificates from the surveyor's office of Starr County, to which Encinal is attached for surveying purposes, and in October, 1883, filed them in the office of the surveyor of Zapata County, where he designated lands which he desired to have surveyed for the school

fund by virtue of the same certificates, but the surveyor declined to make the surveys on the ground that the lands which plaintiff sought thus to appropriate were titled lands, and therefore not subject to location.

On September 15, 1884, plaintiff brought an action in which he sought a writ of mandamus to compel the surveyor to make the surveys under these locations and to return them to the General Land Office, but on hearing that action was decided against him and is now pending in this court on appeal.

The court found that no valid surveys of the land in controversy were ever made, and further "that the plaintiff's file and locations on the lands in controversy are not valid in law, the certificates never having been returned and filed in the General Land Office as required by law, and will not support an action of trespass to try title; that the withdrawal of said land certificates from the hands of the surveyor of Starr land district by the plaintiff and his failure to return the same to the General Land Office with his field notes invalidated said field notes, and that they are invalid and worthless as title."

It is not clear on what ground the court based the finding that no valid surveys of the lands in controversy were ever made; but from the brief of counsel the inference is that the court so held on the ground that plaintiff, under the law, should have located and had the surveys made as alternate certificates granted to railroads were required to be, and that for this reason it was not lawful for plaintiff to locate all the lands he claimed for himself in one body, and to locate the school lands, which he was bound to locate, in some other place.

As the locations were made, plaintiff selected for himself in one compact body twenty-one thousand seven hundred and sixty acres of land in one county and a like quantity of land for the school fund in another, but we are not advised whether this is in one body.

The law under which the certificates in question were issued provided that "The certificates granted under the provisions of this act shall be located as follows: The locator shall also locate a like amount of land for the benefit of the permanent school fund before either shall be patented, and such locations shall be made on any of the public domain of Texas not reserved by law from location." Gen. Laws 1881, 122.

Each certificate issued under that act it was contemplated should be used to segregate from the public domain twenty-five hundred and sixty acres of land, thus appropriating to the owner of the certificate twelve hundred and eighty acres and a like quantity for the school fund; and it was evidently intended that the surveys for each should be separate, and not that one survey of twenty-five hundred and sixty acres should be made in which the owner of the certificate and the school fund should have equal but undivided interest, for one of the purposes as

well as the consideration on which these grants were to be made was that the owner of such a certificate should segregate from the public domain twelve hundred and eighty acres for the school fund.

The act under which the certificates in question were issued did not, in terms, provide that they should be located as were alternate certificates issued to railway companies required to be under the Act of August 15, 1876; nor does it declare that the locator shall have the right to select which of the two surveys shall be patented to him, and it may be that until further legislation regulating this matter no patent could legally issue for one of such surveys to the owner of the certificate.

In Railway v. The State, 77 Texas, 386, it was said that "the Act of April 9, 1881, granting lands to disabled Confederate soldiers made the required division by directing that the certificates should be located in alternate surveys, one of which was expressed in the act to be for 'the benefit of the permanent school fund.' The act does not in words say that the other shall belong to the soldier or owner of the certificate, but nobody has hesitated to give it that construction."

If the Legislature had clearly given to the owner of such a certificate the right to select which of the two surveys required to be made he should have, such legislation would be valid, if the constitution interposes no obstacle to such a law; and under such a law, had appellant caused two surveys to be made on vacant land and returned the same to the General Land Office on each certificate, then he would show such right as would enable him to maintain an action of trespass to try title for the lands selected by him; but it may be doubted in the absence of such a law if he shows any right sufficient for the maintenance of this action even if he had shown that he had caused a like quantity of land to be surveyed for the school fund by virtue of the same certificates. This question, however, we will not undertake now to decide.

If it be conceded that appellant had the right to select which of two surveys, made by any one certificate, he would appropriate to himself, this will not remove the obstacles to his right to maintain this action.

In all the laws giving to individuals or corporations the right to acquire land coupled with a requirement that a like quantity shall be surveyed for the school fund, it has been contemplated that the surveys which the owner of the certificate shall have and the surveys for the school fund under the same certificates shall be contiguous, and there is nothing in the act under which the certificates owned by plaintiff were issued which shows a contrary intention. The purpose of the act evidently was to secure to the school fund lands of equal value to those which the owner of the certificate should obtain, as nearly as this was practicable, giving to each a like number of acres, and under all the laws this has been deemed to have been substantially accomplished when the surveys were made contiguous.

It never was contemplated, as contended by appellant, that the owner of such a certificate might for himself select lands in one locality and locate in some other part of the State lands for the school fund.

Under a law permitting such a course, with no restraint on the owner of such certificates, it would be contrary to the experience of mankind, when good unappropriated lands became scarce, to expect that selfish promptings would not induce the holders of such certificates to locate for themselves first the best lands they could find to the extent of their interests in the certificates, and then for the school fund such as might be found in the same locality or in some other part of the State where a sufficient area of vacant land might be found, even though this was in some worthless mountain range or on lands for some other reason practically worthless.

The Legislature evidently never intended to grant such a right and thus sacrifice the interest of the school fund, even if that was dependent solely on legislative liberality and not secured by any constitutional guarantee.

Appellant may have intended to locate lands of equal value in another locality as those selected by and for himself, but this was not a compliance with the spirit of the law. Such a course as was pursued was never contemplated, and we are of opinion that the court below did not err if the holding was that plaintiff had not made locations and surveys in accordance with law.

If he were suing on patents issued on illegal surveys no one not claiming under some right existing prior to the issuance thereof could question their validity, but he bases his action on his surveys, and to maintain it must show that he has surveys valid in law, surveys upon which patents might legally issue.

If it were contended that appellant ought to be permitted to hold one-half of each survey sued for and thus be entitled to maintain this action as a tenant in common, the answer to this would be that it was incumbent on him to segregate from the vacant public domain and from that which might become his own a like number of acres for the school fund as for himself. This was the consideration he was bound to give before he could become entitled to any land under such certificates.

The statute declares that "all certificates for headrights, land scrip, bounty warrants, or any other evidence of right to land recognized by the laws of this State, which have been located and surveyed, shall be deemed and held as sufficient title to authorize the maintenance of the action of trespass to try title" (Revised Statutes, art. 4795), but by this is meant a location and survey in accordance with law under such a claim for land.

A plaintiff who has located and caused to be surveyed, in accordance with law, any land by virtue of a valid land claim, nothing further ap-

pearing, shows such right as will enable him to maintain an action such as this; but when it appears that the location and survey were not made in accordance with law they furnish no such evidence as the statute declares shall be deemed sufficient to maintain the action.

If the land in controversy was vacant public domain appellant might have caused eighteen surveys to be made thereon, sixteen of those exhausting eight of the certificates, and securing to himself and the school fund each eight surveys of twelve hundred and eighty acres and through another certificate securing to each six hundred and forty acres. This would have been the lawful and just course, but instead of pursuing it appellant assumed the right to ignore the right of the school fund to have any part of the land and to appropriate nearly five leagues in one body to his own use.

This led to other acts on which the court below held, if the surveys as made ever could have been treated as valid, that appellant forfeited his right to them by withdrawing the certificates from the surveyor's office and failing to return them with the field notes to the General Land Office within the time prescribed by law.

The claims for land on which appellant bases his right must be deemed land certificates or land scrip, and subject to the general laws so far as applicable regulating the location and survey of such claims; for if this be not true no laws exist through which appellant could legally have appropriated any lands under his claims. That the certificates under which the lands in controversy were surveyed were not returned to the General Land Office is a conceded fact, as is it that they were withdrawn from the surveyor's office of the land district in which the surveys were made and filed in the office of the surveyor of another land district.

By the Act of August 30, 1856 (Paschal's Digest, art. 4573), it was provided that the surveyor should, "before registering any entry or application, require the applicant to file his land certificate or scrip, or other legal evidence of title to land, * * * which he shall not allow to be taken from thence until the same is returned, together with the field notes, to the General Land Office." This act was entitled "An act prescribing the manner of entering land certificates or scrip, and to prohibit the lifting and floating the same."

On February 10, 1852, an act was passed which provided within what time surveys should be made and returned to the General Land Office after entry or location, but that law did not require the land certificate to be returned with the field notes. Pasch. Dig., arts. 4562–4568.

The laws now in force having a bearing on the question decided by the court below are as follows:

"An entry or application shall be in writing and be dated and signed by the applicant. It shall particularly describe the claim to be

surveyed and the land applied for, which entry or application, together with the land certificate or scrip, or other legal evidence of title to be surveyed, shall be filed in the office of the county or district surveyor in which the land is situated, and where the said claim to be surveyed shall remain until returned, together with the field notes, to the General Land Office." Rev. Stats., art. 3895.

"All surveys shall be made by authority of law or under or by virtue of some genuine land certificate, which is at the time on file in the county or district surveyor's office where the land is situated, and by a county, district, or deputy surveyor, duly appointed or elected and qualified." Rev. Stats., art. 3906.

"When a certificate has been located in part the original shall not be withdrawn from the General Land Office, but the commissioner shall deliver to the interested party a certificate for the unlocated balance, stating whether said certificate can be further divided." Rev. Stats., art. 3810.

"Whenever any genuine land certificate has been located and surveyed in part, and the same with the field notes has been returned to and filed in the General Land Office, it shall be the duty of the Commissioner of the General Land Office to issue to the owner thereof, his agent, or legal representative, on demand, a certificate for the unlocated balance of said original, stating therein the number and amount of locations made on the original, and the same may be located, surveyed, and patented as in other cases." Rev. Stats., art. 3890.

"Surveys must be made within twelve months after locations, and must be returned to the General Land Office within twelve months after they are made." Rev. Stats., arts. 3902–3909.

These statutes prescribe the time within which after survey the field notes must be returned, and require that the certificate by virtue of which the survey may be made shall be filed and remain in the office of the surveyor of the district or county in which the land is situated until with the field notes it is returned to and filed in the General Land Office, where it must remain; and if the certificate has not been exhausted, these laws provide for the issuance of a certificate for the unlocated balance, which may be done when certificates such as those involved in this case have not been used to appropriate all the land that may be by virtue of them; as well as in case of any other class of certificates returned to the General Land Office when only partially located.

These laws apply to every evidence of right to acquire land recognized by law.

The leading purpose of most of these laws evidently was to prevent holders of certificates from holding for a time different tracts of land by virtue of the same certificate to the prejudice of the rights of others, which can not be done if the certificate when located must remain in

the office of the surveyor until with the field notes it is sent to the General Land Office, where it must remain with the field note or notes made by virtue of it by the first surveyor in whose office a location is made under it on vacant land; for no surveyor can legally make a survey under it unless he has possession of it.

These laws and others evidence that it was not intended when a survey with the certificate by virtue of which it was made has been filed in the Land Office that the certificate shall ever go out again for any purpose. Rev. Stats., arts. 3888, 3889, 3890, 3887, 3810.

The withdrawal of the certificates from the surveyor's office, where first filed, was a violation of the law which if countenanced would enable holders of certificates, when pliant surveyors could be found, to continue the practices the laws were made to prevent. The surveyor of the county in which the certificates were last filed might with as much propriety permit them to be withdrawn from his office for the ostensible purpose of locating the lands to be held by their owners as could the surveyor with whom first filed permit them to be withdrawn to locate the school lands; and this course be repeated during the lifetime of the certificate, if surveyors could be found who would permit it; and as the certificates would not show what locations by virtue of them had been made from time to time each surveyor would have the same excuse for permitting them to be taken from his office as had the first.

The purpose of appellant in withdrawing the certificates from the surveyor's office by whom the surveys were made doubtless was none other than to locate for the school fund a like number of acres as already located for himself, but good intentions can not make acts lawful which the law forbids. The laws required the return of the field notes, with the certificates, to the General Land Office within twelve months after the surveys, and appellant could and should have complied with them; and if it were conceded that he could lawfully have the surveys made as he did on each certificate, and survey lands on them for the school fund in some other county, still we are of opinion, as held by the court below, that by his violation of the law he must be held to have forfeited any right he might have acquired had he returned the surveys and certificates to the Land Office together within the time prescribed by law.

In House v. Talbot, 51 Texas, 467, it seems to have been held that the failure to return the certificate with the field notes would not operate a forfeiture of the survey, but the facts on which that case rested occurred before the Act of August 30, 1856, which seems to have been the first law requiring certificates to be returned to the General Land Office with the surveys made on them, and to remain in the surveyor's office until so returned. In Snider v. Methvin, 60 Texas, 487, the survey and certificate were returned to the General Land Office before the Act of February 10, 1852, and the effect of the Act of August 30, 1856, was not considered, nor was it necessary to, for it was not retroactive.

There is another ground, however, on which the judgment must be affirmed. The Constitution provides that "all genuine land certificates hereafter issued by the State shall be surveyed and returned to the General Land Office within five years after issuance or be forever barred." Constitution, art. 14, sec. 2.

All the certificates in question were issued before December 2, 1882, and some of them had been returned to the General Land Office on July 16, 1889, when the judgment in this cause was rendered. No legal obstacle to their return existed, and it must be held that appellant's failure to return them within the time prescribed by the Constitution operated a forfeiture of any right under them; for a survey upon certificate valid at time survey was made can confer no right after the certificate becomes barred. Whether the surveys in controversy, with the certificates on which they were made, would be returned within the time prescribed depended solely on the volition of appellant, and he elected not to do this. Had he done this and obtained certificates for unlocated balance on which a surveyor refused to make surveys, then a question would arise whether those last certificates would be barred, if with the use of all diligence he was unable through the courts to compel surveys to be made in time to have them returned before the period prescribed by the Constitution; but from what period time would be computed on certificates for unlocated balances it is not necessary to consider.

It has been held in several cases where persons were unable to have surveys made within one year after valid location, by reason of the refusal of a surveyor to survey, that time would not bar the right if the locator promptly resorted to the courts to compel the surveyor to act and had the survey made as soon as he could thus enforce it, but it is not now necessary to inquire whether the same ruling could properly be made under the peremptory provisions of the Constitution, for no such question arises in this case.

The court below found that the surveys in controversy covered a Mexican grant, made to a person through whom defendants claim, about the year 1834, by the State of Tamaulipas; but in view of the want of sufficient title in appellant to enable him to maintain this action, it becomes unnecessary to determine whether the evidence was sufficient to justify the presumption of a grant which the court found.

For the reasons noticed the judgment will be affirmed.

*Affirmed.*

Delivered March 17, 1891.

*Walton, Hill & Walton* argued a motion for rehearing. The motion was transferred to Austin Term, 1891, and there refused.