STATE OF TEXAS V. E. M. POWELL.

Decided December 21, 1910.

**1.—Judgment—Cancellation of Patent—Subsequent Validating Act.**

The Act of April 7, 1897, Laws Twenty-fifth Legislature, page 113, validating locations of Confederate land scrip (Act of April 9, 1881, Laws Seventeenth Legislature, page 122), where the alternate section for the State had not been surveyed contiguous or adjacent thereto as required by law, applied to such location, though the State had, before the validating enactment, recovered a judgment cancelling the patent because so unlawfully located.

**2.—Same—Retroactive Act—Constitutional Law.**

An Act validating a land location did not constitute "judicial legislation" beyond the power of the Legislature, though while the location was still void the State had recovered a judgment so pronouncing it. The location was void before the judgment so determined; it was valid *ab initio*, after the validating Act had made it so. The judgment affected only such rights in the land as the patentee had when it was recovered, not those acquired under the validating Act.

**3.—Constitutional Law—Public Land—School Fund—Judicial Notice.**

The courts can not judicially know that at a given date more than one-half of the public land had been exhausted by private grants, making the remainder property of the school fund by operation of article 7, section 2, of the State Constitution. (Hogue v. Baker, 92 Texas, 58, distinguished.) Nor can the Act of February 23, 1900 (Laws Twenty-sixth Legislature, First Called Session, page 29), declaring such to be the condition of the public lands, be taken as establishing the existence of that state of facts in 1895.

**4.—Public Land—Recovery by State—School Fund—Act of 1889.**

The Act of April 18, 1889, Laws Twenty-sixth Legislature, page 123, making all lands recovered by the State from grantees a part of the Public School Fund, did not affect a tract where the title of the grantee had been validated by Act of the Legislature after its recovery by the State and before the passage of the Act of 1899.

Appeal from the District Court of Travis County. Tried below before Hon. Chas. A. Wilcox.

*Jewel P. Lightfoot,* Attorney General, and *L. A. Dale,* Assistant, for appellant.—The Act of the Legislature of April 7, 1897, did not validate appellee's title; the title having been theretofore, by judicial decree, vested in the State of Texas. Const., art. 2; March v. State, 44 Texas, 79; Rev. Stats., art. 5275; Lytle v. Halff, 75 Texas, 133; Leach v. State, 36 Texas Crim., 251; First Nat. Bank v. Preston Nat. Bank, 85 Texas, 562; Berrett v. Oliver, 7 Gill & J. (Md.), 191; People v. Saginaw Co., 26 Mich., 22; Menges v. Dentler, 33 Pa. St., 495, 75 Am. Dec., 616; Taylor v. Place, 4 R. I., 324. When the State recovered the land in controversy from appellee, the same thereby became the property of the public school fund of the State, and was not subject to location under

the John Wheat certificate, nor could the Legislature validate a former location made thereon. Sec. 2, art. 7, Constitution of Texas; sec. 2, art. 14, Constitution of Texas; General Laws, 1899, p. 123; General Laws, 1900, 1st Called Session, p. 29; Hogue v. Baker, 92 Texas, 58; State v. Delesdenier, 7 Texas, 108; Day Land & Cattle Co. v. State, 68 Texas, 526; Milam v. Bateman, 54 Texas, 153; Milam v. Blake, 54 Texas, 169; Yazoo City v. State, 48 Miss., 440; Mobile & O. R. R. Co. v. State, 51 Miss., 137; State v. Tillman, 14 Iowa, 474; State v. Reeder, 5 Neb., 203; Attorney General v. City of Providence, 8 R. I., 8; Harvey v. Harvey, 25 S. C., 283.

*Holloway & Holloway,* for appellee.—The Act of April 7, 1897, rendered the appellee's location and patent valid *ab initio,* notwithstanding the intervening judgment in favor of the State. The land in controversy did not become, as a result of the judgment of June 4, 1895, a part of the public school fund. Von Rosenberg v. Cuellar, 80 Texas, 249; Smith v. McGaughey, 87 Texas, 61; King v. Course, 25 Ind., 202; Com. v. Marshall, 69 Pa. St., 328; Utter v. Franklin, 172 U. S., 416; Steele County v. Erskine, 98 Fed., 215, 39 C. C. A., 173; Richman v. Muscatine Co., 77 Iowa, 513, 14 Am. St., 308; Ferry v. Campbell, 50 L. R. A., 92, 96; State v. Wheeling, etc., Bridge Co., 18 Howard, 421; Wrought Iron Bridge Co. v. Town of Attica, 119 N. Y., 204.

RICE, ASSOCIATE JUSTICE.—This is an action of trespass to try title, brought by the State against appellee, for the recovery of 1280 acres of land situated in Wichita County.

Defendant replied by plea of not guilty. The case having been tried before the court without the intervention of a jury on an agreed statement of facts, resulted in a judgment in behalf of appellee, from which the State has prosecuted this appeal.

The facts as agreed upon are briefly, in substance, as follows: That the John Wheat Confederate scrip certificate was located on the land in question by E. M. Powell, assignee of said Wheat. At the same time said Powell surveyed for the State an equal quantity of land, which, however, was not contiguous to the land in question, but was located in another county. The land so surveyed for the State was taken by the State under said survey and sold by it. The land in question was patented to said Powell as assignee of John Wheat by patent No. 165, vol. 37, dated May 21, 1888. Prior to the 4th day of June, 1895, the State of Texas instituted a suit against said Powell in the District Court of Wichita County to cancel said patent, *on the sole ground that the land surveyed for the State was not contiguous to the land covered by the patent;* and on this issue between the State and said Powell, judgment was rendered in said cause on the 4th day of June, 1895, a copy of which judgment was attached to said agreement and is made a part of said statement of facts. This judgment was not appealed from. The land in question was duly assessed for taxes from the date of said

patent, and all taxes thereon were paid by said Powell to the year 1908, inclusive.

It is conceded by the defendant that the State of Texas is entitled to a judgment for said land in this suit by virtue of said judgment of June 4, 1895, unless the Act of the Legislature of April 7, 1897, validating Confederate scrip locations had the effect of validating and confirming appellee's title, notwithstanding the intervening judgment of June 4, 1895. It is conceded by the State that, but for the judgment of June 4, 1895, the validating Act of April 7, 1897, would have had the effect of validating the defendant's title. The exhibit referred to is a final judgment of the District Court of Wichita County rendered on June 4, 1895, giving judgment to the State of Texas for the land sued for, and decreeing cancellation of the patent therefor, being the same patent above mentioned.

Prior to the Act of 1897, it had been held by our Supreme Court that the Act of 1881 contemplated that the surveys to be located by virtue thereof under Confederate scrip certificates, in order to be valid, should be contiguous to each other. See Von Rosenberg v. Cuellar, 80 Texas, 249. It appears from the statement of facts that the land surveyed for the State under this certificate was not contiguous to the land covered by the patent, and that the judgment of the District Court of Wichita County cancelling the same was based alone upon this fact.

There are but two questions arising in this appeal, as presented by appellant's assignments. The first is whether or not the validating Act of 1897, above referred to, by reason of its terms, had the effect of validating the patent to appellee, notwithstanding the intervening judgment rendered in behalf of the State cancelling the same. The second question is, Did the land in issue, by reason of the judgment of the District Court cancelling the patent, at once become the property of the public free school fund of the State, and, therefore, not subject to location under the certificate, notwithstanding the Act of 1897, validating said locations? The State contends that the first question should be answered in the negative, and the latter in the affirmative; the first for the reason that the Act in question would be, in effect, judicial legislation and would nullify the judgment rendered long prior to its enactment; and further because it can not be gathered from the Act itself that it was intended to have such effect. In 1897, the Twenty-fifth Legislature, page 113, passed the following Act:

"Sec. 1. Be it enacted by the Legislature of the State of Texas: That all patents issued by the State upon locations or surveys of land made by virtue of any certificate issued under the provisions of an Act of the Legislature of the State of Texas, entitled 'An Act granting to persons who have been permanently disabled by reason of wounds received while in the service of this State or of the Confederate States, a land certificate for twelve hundred and eighty acres of land,' approved April 9, 1881, be and are hereby validated, and the fact that the school and individual sections, or surveys made by virtue of any such certificate, may not have been made contiguous or adjacent to each other shall

not be held to invalidate the patent issued on such survey, nor to invalidate the right of the public free school fund to the land located or surveyed for the benefit thereof by virtue of any such certificate."

It will be seen, therefore, that by the terms of the law it was not the object of said Act to set aside the judgment of the court, but only to validate locations and patents to surveys made thereunder, notwithstanding the fact that the sections surveyed by virtue thereof were not contiguous to each other. So that the law, in effect, simply declared that the failure to so locate the two surveys did not render the location void, but declared that the same should be validated.

Appellee contends that the Act in question rendered his location and patent valid *ab initio,* notwithstanding the intervening judgment in favor of the State. We think this view correct. It is true that appellee concedes that the original location and patent were invalid, under the rule laid down in Von Rosenberg v. Cuellar, *supra;* but it is also conceded by the State that but for the judgment of June 4, 1895, the Act of 1897 would have had the effect of validating defendant's title. The decree setting aside the patent did not render it void. It was already so under the authority last quoted.

Appellee further contends that the case of Utter v. Franklin, 172 U. S., 416 (43 L. Ed., 498), is conclusive of the question presented. In that case, as shown by his brief, "Pima County, Arizona, had issued $200,000 in bonds in aid of a certain railroad. Suit was brought to recover the interest on $150,000 of these bonds. The Supreme Court of Arizona and the Supreme Court of the United States held that the bonds were invalid. Thereafter certain validating Acts were passed by the Territory of Arizona and by the Congress of the United States, the effect of which Acts was to validate all such bonds issued in aid of railroads. After the last validating Act of Congress, a mandamus proceeding was brought against the Territory officials to compel them to issue new bonds in lieu of the original issue, which had been declared void. It was insisted that the validating Act did not have the effect of validating these particular bonds, because they had been declared void by the former judgment. The Supreme Court of Arizona refused the mandamus on this ground, but the Supreme Court of the United States reversed that decision, and held that the bonds were validated by the Act of Congress, notwithstanding the intervening judgment declaring them void." Justice Brown said, in passing upon this question: "The fact that this court had held the original Pima County bonds invalid does not affect the question. They were invalid, because there was no power to issue them; they were made valid by such power being subsequently given, and it makes no possible difference that they had been declared to be void under the power originally given. The judgment in that case was *res adjudicata* only of the issue then presented, of the facts as they then appeared and of the legislation then existing."

In Steele County v. Erskine, 98 Fed., 215 (39 C. C. A., 173), where the county commissioners had contracted for having certain of its records transcribed, in payment for which it had issued its warrant which had

been assigned, and upon which suit was brought against the county, the Supreme Court of North Dakota, upon appeal from that judgment, held the contract invalid on the ground that the commissioners had no authority under the law to make the contract. Thereafter a validating Act was passed, and a new suit instituted upon the same cause of action, and the suit was sustained, notwithstanding the prior judgment. The court said, in passing upon the question: "The former judgment between the parties simply declared the contract unenforcible because it was made without legislative authority. How can such a judgment be a bar to an action upon the same contract after it has received legislative sanction? Judgments declare the rights of parties after they have been pronounced, but do not preclude the assertion of rights subsequently acquired. In reply to an objection identical with that we are now considering, the Supreme Court said: 'It surely can not be seriously urged that the Legislature is stripped of its power to authorize a contract to have effect in the future by judicial interpretation of the contract, and which at the time had reference to the present and the past only. A very large proportion of the legislation in all the States is prompted by the decisions of the courts, and is intended to remedy some mischief pointed out or resulting from the utterances of the courts of the country.' The present action comes within the principle of a second suit to recover real property based upon a newly acquired title. Such an action is never barred by an adverse judgment in respect to the same property which was rendered before the new title was acquired."

Discussing the question as to whether the Act under consideration amounted to judicial legislation, the court further said: "The objection that the Act in question was judicial legislation wholly misconceives the nature of the Act. The Legislature did not declare the contract valid which the court had adjudged invalid, but made it valid by imparting to it legislative sanction which the court had declared was the only element wanting to its validity. The Act did not construe but completed the imperfect contract which the county had made. Seizing upon the duty that in good conscience rested upon the county to pay for the service which it had received, the Legislature, by virtue of its authority over the municipality as a public agency of the State, ratified its act, and thereby changed its moral duty into a legal obligation. Its Act was formative, not judicial."

The court in the same case, reviewing Pennsylvania v. Wheeling & B. Bridge Co., 18 How., 421, 15 L. Ed., 453, says: "It is (the case just cited) a striking illustration of the power of the Legislature to render lawful that which had been declared unlawful by the courts. In that case the Supreme Court adjudged a bridge which had been constructed across the Ohio River at Wheeling under an Act of the Legislature of Virginia, to be an obstruction to navigation and a common nuisance, and ordered it to be changed so as not to interfere with vessels in use upon the river. The ground upon which the decision rested was that the bridge had been constructed over a navigable stream without authority of Congress, and in violation of rights secured by congres-

sional legislation. Thereafter Congress passed an Act which was in direct contravention of the decree. It declared the bridge which the court had adjudged to be a nuisance to be a lawful structure, and instead of requiring the bridge to be accommodated to the vessels, it required the vessels to be so operated as not to interfere with the bridge. The Act was assailed as in effect annulling the judgment of the court already rendered, and the rights determined thereby in favor of the plaintiff. But the Act was sustained by the court, which held that the want of congressional authority was all that rendered the bridge an unlawful structure, and the authority having been conferred, its character was changed. The Act did not change the decree, but the subject matter upon which the decree operated."

In the case of Richman v. Supervisors, 77 Iowa, 513 (14 Am. St. Reps., 308, 4 L. R. A., 445), it is said, as shown by the syllabus: "If the proceedings of a board of supervisors of a county be void for want of jurisdiction, and if the thing wanting in such proceedings, or which failed to be done, is something which the Legislature might have dispensed with by a prior statute, it is within the power of the Legislature to dispense with it by subsequent statute. Where, therefore, a county board of supervisors proceed to construct a levee, and to assess the cost thereof against certain lands supposed to be benefited thereby, but its proceedings are adjudged to be void for want of jurisdiction, solely because a petition was not filed in the office of the county auditor, signed by a majority of the persons resident of the county owning lands adjacent to the improvement, setting forth the same and the starting point, route and termini, an Act of the Legislature subsequently enacted to validate such proceedings will not be unconstitutional, since the jurisdictional Act was one with which the Legislature could have dispensed in the first instance."

In the case of Wrought Iron Bridge Co. v. Town of Attica, 119 N. Y., 204 (23 N. E., 542), the plaintiff had constructed a bridge for the town, and sued for the contract price. The court held against the plaintiff on the ground that the contract was without authority, and all proceedings were unauthorized. Subsequently a curative Act was passed by the Legislature, legalizing the proceedings taken by the town. A new suit was filed, which was resisted upon the ground that the Legislature had no power to validate a claim against the town which had been adjudged invalid by the courts. The Court of Appeals of New York gave judgment for the Bridge Company, notwithstanding the prior judgment in favor of the town of Attica. The town of Attica had acquired no vested right by virtue of the first judgment, nor was the validating Act an usurpation of judicial functions."

Applying the principle running through these cases to the case at bar, it will be perceived that the Legislature did not undertake to declare valid the prior location which the court had adjudged invalid, but simply declared all such locations valid, notwithstanding the fact that the former law required said surveys to be contiguous. The Act simply rendered that legal which had been illegal by ratification thereof.

The State had obtained the benefit of the location made for it, and had disposed of the land so surveyed by appellee. Certainly, the equities of the appellee were as great as those of other locators in like condition against whom no judgment had been rendered. And we do not think it was the intention of the State by this Act to exclude him, or others in like position, from its benefits. It will be observed that no exceptions are contained within the Act as to whom it shall apply. We are therefore constrained to believe, notwithstanding the intervening judgment, that appellee's location and title, by reason of said validating Act, was rendered valid, and that the trial court did not err in so holding.

The second contention can only be sustained upon the ground that, at the time of the rendition of the judgment in the Wichita County District Court, the land, *eo instanti,* became the property of the school fund. This, it is claimed, was true by reason of section 2, article 7, of the State Constitution, which is as follows: "All funds, lands and other property heretofore set apart and appropriated for the support of public schools; all the alternate sections of land reserved by the State out of grants heretofore made or that may hereafter be made to railways, or other corporations, of any nature whatsoever; one-half of the public domain of the State and all sums of money that may come to the State from the sale of any portion of the same, shall constitute a perpetual school fund." And Hogue v. Baker, 92 Texas, 58, 45 S. W., 1004, is referred to in support of this contention. We think, in order to so hold, we must declare that, at the time said judgment was rendered, more than one-half of the public domain had been exhausted by grants and patents from the State for the benefit of persons other than the public free school fund. There is no evidence of this fact in the record, nor do we think that we can take judicial cognizance of such fact. It is true that this was so declared in Hogue v. Baker, *supra,* but it must be recalled that that case went off on demurrer by the relator to the State's answer setting up the facts showing that one-half of the public domain had been exhausted, which, by agreement of the parties, was held to have been admitted, so that case is not authority for holding that the court could take judicial cognizance of the fact (if it be one) that more than one-half of the public domain had been exhausted prior to June, 1895, the date when the State recovered judgment for said land. Nor do we think the Act of 1899 or 1900 applicable, the first of which declares (p. 123) that "all the lands heretofore or hereafter recovered from railroad companies, firms, corporations or persons by the State of Texas, by suit or otherwise, shall at once become part of the permanent school fund of the State, and shall be disposed of as other lands, except as herein provided," for the reason that said Act was passed two years after said validating Act. If the land, by reason of the validating Act of 1897, became the property of appellee, then said subsequent Act of 1899 could not, in our judgment, be held to have retroactive effect, so as to divest title out of him. Nor do we see that the Act of 1900, relied upon by appellant, which, in effect, declares that more than one-half of the public domain at that time had been exhausted,

and making an appropriation for the benefit of the school fund to cover such deficit, can be looked to by us in aid of appellant's contention, because that Act does not determine or undertake to determine that such condition was true in 1895, at the time the Wichita County judgment was rendered, under which the State claims the land; for which reason we are constrained to hold that the land in question did not become the property of the school fund, *eo instanti,* by virtue of the judgment of the District Court of Wichita County rendered in 1895 cancelling said patent; but that it thereby became the property of the State, which had the authority to pass the validating Act, reinvesting appellee with title thereto, notwithstanding said judgment; and we therefore conclude that appellant's assignment presenting this question should be overruled.

Finding no error in the judgment of the court, the same is affirmed.

*Affirmed.*

Writ of error refused.