Antonia Caricato **ALLISON**, Appellant,

v.

William R. **ALLISON**, Appellee.

No. 2–84–236–CV.

Court of Appeals of Texas, Fort Worth.

May 22, 1985.

Gandy, Michener, Swindle, Whitaker & Pratt, James G. Reynolds, Fort Worth, for appellant.

Lane, Ray, Getchell, Farris & Schleier, Henry Getchell, Vicki Smith Ganske, Fort Worth, for appellee.

Before JORDAN, ASHWORTH and HOPKINS, JJ.

## OPINION

ASHWORTH, Justice.

This is an appeal from the granting of a motion for summary judgment denying partition of military retirement benefits previously awarded to the husband in a prior suit for divorce.

Antonia Allison, appellant, and William Allison, appellee, were divorced September 30, 1981. In the divorce decree, all military retirement benefits were awarded to William, apparently in accord with *McCarty v. McCarty*, 453 U.S. 210, 232–36, 101 S.Ct. 2728, 2741–43, 69 L.Ed.2d 589 (1981). Neither of the Allisons appealed any part of the divorce decree.

On September 9, 1982, the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. sec. 1408 (1983 & Supp.1985) was signed by the President, effective February 1, 1983, ["USFSPA" or "the Act" herein]. This law allowed state courts to treat military retirement pay "either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C. sec. 1408(c)(1) (1983).

Appellant filed suit February 16, 1984, to partition appellee's retirement benefits, alleging the USFSPA treats such benefits as community property. Appellee filed a motion for summary judgment on the basis that the divorce decree fully litigated all issues between the parties, and the doctrine of res judicata prevented retrial of the case. The motion for summary judgment was granted October 1, 1984, from which appellant timely perfected her appeal.

We affirm the judgment of the trial court.

■ In her single ground of error, appellant contends the trial court erred in granting the summary judgment because the USFSPA applied retroactively to the divorce decree in question so that the trial court was now empowered to divide appellee's military retirement benefits. Appellant relies principally upon *Cameron v. Cameron*, 641 S.W.2d 210 (Tex.1982); *Trahan v. Trahan*, 682 S.W.2d 332 (Tex.App. —Austin 1984, application for writ pending) and *Harrell v. Harrell*, 684 S.W.2d 118 (Tex.App.—Corpus Christi 1984, application for writ pending). *Cameron*, it is argued, states that the USFSPA renders *McCarty* a nullity as if it had never existed. We disagree with that position. *Cameron* dealt with a divorce and property division

that was pending in the Texas Supreme Court when the USFSPA was signed into law. *Cameron*, 641 S.W.2d at 210–11. The trial court had awarded the wife 35% of the husband's military retirement pay in a divorce decree dated March 29, 1979. *Id.* at 212–13. The husband appealed, contending the wife was not entitled to the benefits as they had been earned while the couple lived in common-law states and were thus his separate property. *Id.* at 210–11. The Court of Appeals agreed with the husband, basing its decision on a Texas Supreme Court opinion which was subsequently withdrawn. *Cameron v. Cameron*, 608 S.W.2d 748 (Tex.Civ.App.—Corpus Christi 1980). The appellate court opinion was rendered October 23, 1980, approximately eight months prior to the *McCarty* opinion. *Cameron*, 608 S.W.2d at 748. The wife then appealed to the Texas Supreme Court, and the case was still pending when *McCarty* was issued. *Cameron*, 641 S.W.2d at 212.

The Supreme Court noted that it had construed *McCarty* to prevent division of military retirement benefits under Texas community property law. *Id.* However, while the case was still before the Supreme Court, and no final decree had been rendered, the USFSPA was signed into law allowing state courts to once again divide military retirement benefits if their state's marital property law so provided, but the Act *limited* such division to benefits received after June 25, 1981. *Id.* at 212–13. The Supreme Court then awarded the wife benefits *not* back to the date of the divorce in 1979, but only back to June 25, 1981, the date *McCarty* was rendered. *Id.* at 223. Obviously the court considered the *McCarty* opinion to have been of valid force and effect when made, and *only* the intervention of the USFSPA allowed Texas courts to once again consider the retirement benefits to be community property.

We have read the *Trahan* and *Harrell* opinions, but decline to follow their reasoning, adopting instead the position taken by the San Antonio court in *Breen v. Breen*, 693 S.W.2d 495 (Tex.

App.—San Antonio, March 13, 1985) (not yet reported).

*Harrell* involves a post-*McCarty* final divorce decree which made no mention of the husband's retirement benefits. *See Harrell*, 684 S.W.2d 118. The trial court ruled the wife take nothing in her subsequent partition suit, filed over eighteen months after the decree and three months after the effective date of the Act. *Id.* The appellate court reversed and remanded, holding res judicata did not apply because the benefits could not have been "litigated" in the original divorce decree. *Id.* at 121–22. Although the court ruled that partition was not the proper remedy, the wife would be allowed to reopen the divorce proceedings under an equitable bill of review to decide the sole question of division of the military retirement benefits. *Id.* at 123. However, this ruling of the *Harrell* court conflicts with the Supreme Court's ruling in *Jacobs v. Jacobs*, 687 S.W.2d 731, 732 (Tex.1985) that there can be no piecemeal division of community assets. If the military retirement benefits are community property, then the *entire* community estate in *Harrell* must be relitigated, thus subjecting trial courts to an "unreasonabl[e] burden" and "encourag[ing] forum shopping," an evil the court sought to avoid. *Harrell*, 684 S.W.2d at 122.

■■■■ *Harrell* is distinguishable from the case before us in that the benefits were specifically given to William Allison in the divorce decree. Further, we disagree with the holding in *Harrell* that res judicata could not be applied because the law at the time of divorce prevented litigation of retirement benefits. *Id.* It has long been a requirement of the law that if a state wished to adjudicate the local treatment to be accorded federally created property rights, it must do so in a manner which does not frustrate the express or implied purposes of the Federal legislation. *Free v. Bland*, 369 U.S. 663, 666–68, 670, 82 S.Ct. 1089, 1092–93, 1094, 8 L.Ed.2d 180 (1962) (reversing a Texas Supreme Court ruling that had declared Texas community property law controlled inheritance of U.S. Savings Bonds, not the survivorship provisions written in the Bonds). *See also Wissner v. Wissner*, 338 U.S. 655, 659–60, 70 S.Ct. 398, 400–01, 94 L.Ed. 424 (1950). Although *McCarty* altered what state courts could do with military retirement benefits upon divorce, we do not interpret *McCarty* as precluding state court adjudication of the benefits. The fact that the divorce court in *Harrell* failed to mention the disposition of the benefits in the decree did not mean it could not do so.

*Trahan* involved a divorce finalized in 1979 and again, as with *Harrell*, no mention was made in the decree of the retirement benefits. *Compare Trahan*, 682 S.W.2d at 333 *with Harrell*, 684 S.W.2d at 120. The wife sought to partition the benefits in 1979 and was awarded 38.96% thereof. *Trahan*, 682 S.W.2d at 333. The Austin Court of Appeals affirmed. While the husband's appeal was pending in the Supreme Court, *McCarty* was rendered and in accord with it, the Texas Supreme Court reversed the award and ordered the wife take nothing. *Id.* at 333–34. Nine days after the effective date of the USFSPA, the wife filed suit seeking once again to partition the military retirement benefits. *Id.* at 334. The trial court awarded her 38.96% and the husband appealed, contending the question had been settled by the Texas Supreme Court already, and the doctrine of res judicata precluded a second suit on the same issues between the same parties. *See id.*

The Austin Court of Appeals affirmed the award, holding the Act had reversed *McCarty*, allowing state substantive law to be applied to the military benefits, but collection of the benefits was enforceable only back to June 25, 1981, the date of *McCarty*. *See id.* The court in *Trahan* cited two out-of-state decisions which allowed division of the benefits. The first, *In Re Marriage of Hopkins*, 142 Cal.App.3d 350, 191 Cal.Rptr. 70 (1983) did *not* involve a final divorce decree; indeed, the court repeatedly and often italicized the expression "not yet final" in discussing which cases would be sent back to the trial court to divide the

benefits. *Id.* at 336. The second case, *Smith v. Smith,* 458 A.2d 711 (Del.Fam.Ct. 1983), involved the decision of a family court judge to reopen a divorce under that state's procedural rule 60(b) which, similar to the Federal Rule 60, allows relief from final judgments where "(5) ... a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment have prospective application; or (6) any other reason justifying relief from the operation of the judgment." *Smith,* 458 A.2d at 713. Since Texas has no counterpart to that rule, *Smith* is of little value to us.

On authority of *State v. Powell,* 63 Tex. Civ.App. 405, 134 S.W. 746, 748 (1910, writ ref'd), the *Trahan* opinion asserts that res judicata does not apply because the judgment was res adjudicata only of the issues then presented, of the facts as they then appeared and of the legislation then existing. *Trahan,* 682 S.W.2d at 337. *Powell* involved a statute validating a Confederate land scrip award which was invalid when surveyed and had been declared void by a Texas court. *Powell,* 134 S.W. at 747–48. The second court suit, brought *after* the validating statute was passed, declared the Legislature could validate the land grant since it was a lack of legislative authority which originally made the grant void. *Id.* at 749. But an examination of subsequent interpretations of *Powell* reveals a major difference in the intent of the court in writing that opinion and its use in *Trahan.* Compare *Powell,* 134 S.W. at 750 *with Trahan,* 682 S.W.2d at 337.

▄▄▄ *Powell* is actually an early authority for the doctrine that the Legislature may pass validating statutes, but it may not apply statutes retroactively to alter *privately* vested rights, only *public* rights. *Powell,* 134 S.W. at 750; *Inman v. Railroad Commission,* 478 S.W.2d 124, 128 (Tex.Civ.App.—Austin 1972, writ ref'd n.r. e.). Even where public rights are involved, the private rights incidentally affected by such a change may not be disrupted. *Inman,* 478 S.W.2d at 128. As the Austin court itself has declared:

We are well aware of the doctrine announced in *Langever v. Miller,* 124 Tex. 80, 76 S.W.2d 1025 (1934) that the Legislature may not sit as a board of review to which parties might appeal when dissatisfied with the rulings of the Court; and with the corollary that to declare what the law is, or has been, is a judicial power.

*Id.* at 128.

Thus, we feel the opinions of the Austin and Corpus Christi Courts of Appeals have misapplied the law of this State with respect to the issue of res judicata and have overlooked the absence of a procedural device which allows final decrees to be reopened and relitigated after the dust of past conflicts has settled.

▄▄▄ Appellant's suit to partition the retirement benefits was a collateral attack on a final judgment. As with other final, unappealed judgments which are regular upon their face, divorce judgments are not vulnerable to collateral attacks. *Hardin v. Hardin,* 597 S.W.2d 347, 350 (Tex.1980). Although a final judgment may be erroneous or voidable, it is not void and thus subject to collateral attack if the court had jurisdiction of the parties and the subject matter. *Humble Oil & Refining Co. v. Fisher,* 152 Tex. 29, 253 S.W.2d 656, 661 (1952); *Martin v. Sheppard,* 145 Tex. 639, 201 S.W.2d 810, 812 (1947).

▄▄▄ Appellant argues the trial court, in the prior divorce, had no power to litigate the question of military retirement benefits. We disagree, as stated earlier. Because of the effect of *McCarty,* which was a then valid and lawful ruling, the Texas court had no authority to *divide* the federal benefits between appellant and appellee, but it certainly could and did litigate the issue of who owned the right to receive those benefits in accord with federal authority. The benefits were before the court and were disposed of in the judgment. The fact that *McCarty* made those benefits appellee's separate property did not render them "unlitigated," and the subsequent enactment of USFSPA did not alter what had been done in light of the fact

that the divorce judgment was not then on appeal. In the now familiar words of *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), "the res judicata consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled...." *Id.* 452 U.S. at 398, 101 S.Ct. at 2427.

■ Appellant cites this Court to some of the legislative history of the USFSPA stating the purpose of the Act was to allow parties to return to court. As pointed out earlier in this opinion, the Federal statute, which is permissive, cannot create the procedural mechanism to reopen final state court judgments. The law of the courts of *this* State does not have an equivalent of Federal Rule 60 and does not recognize the authority of a trial court to relitigate issues as a general principle.

The fact that allowing this or other judgments finalized during the interim between *McCarty* and the enactment of USFSPA to stand may be harsh, does not alter our holding. It was just as harsh, if not *more* so, to tell parents whose children had been killed by negligent defendants that they could not recover damages if their judgments had become final prior to the Supreme Court's decision in *Sanchez v. Schindler*, 651 S.W.2d 249, 254 (Tex.1983), which allowed recovery for more than the pecuniary value of their children only for cases still in the litigation process. Additionally, we agree with the language and reasoning of the San Antonio court that:

> It is pure speculation to evaluate the degree of unfairness to litigants who are not awarded a share of their spouses' military retirement benefits because their divorce became final between June 25, 1981 and February 1, 1983. Of equal difficulty would be measuring the disruption to property and contractual rights for those who are relying on the validity of judgments finalized during that period.

*Breen,* at 498.

■ The divorce decree awarded all military retirement benefits to William Alli-

son. That judgment, not being void, may not be collaterally attacked now in this partition suit.

Appellant's point of error is overruled and the judgment of the trial court is affirmed.